THE CALCASIEU LUMBER COMPANY v. J. C. HARRIS.

No. 6533.

1. **Right of Way of Railway Company—Statute Construed.**—Article 4216, Revised Statutes, prescribing the rights, etc., of railway companies in the *right of way* acquired by them, has no application to land in which a railway company owns an estate in fee, even though its track be built upon it.

2. **Same—Land Owned in Fee by Railway Company.**—The ownership of land when the estate is a fee carries with it the right to use the land in any manner not hurtful to others, and the right to lease it to others and therefrom to derive profit is an incident of such ownership.

3. **Same.**—No such rights exist in a right of way acquired by condemnation or by a conveyance made by the owner which only conveys the right of way.

4. **Same—Definition.**—The words "right of way," if not defined, are expressive of the very nature of the right ordinarily held by railway companies in the lands over which their roads run—a right to use the land only for railroad purposes.

5. **Case in Judgment.**—The Houston & Texas Central Railway Company owned in fee a strip of land upon which the railroad was built through the town of Manor. The railway company leased to appellant land upon the strip of land west of its depot. The leased land was occupied by appellant for storing its lumber. Suit was brought by another lumber dealer of the town, complaining that his business was obstructed and injured by the occupancy by defendant of the land along the track. *Held,* that no cause of action existed upon the alleged facts.

6. **Duty of Railway Company to Furnish Approach to Track.**—If the railway company fails to furnish proper facilities to lumber dealers for removing lumber from the place where it is unloaded, as far as the railway company owns and controls the land, the injured dealer would have cause of action against the company, but not against a lessee of it.

APPEAL from Travis.    Tried below before Hon. A. S. Walker.
The opinion states the case.

*Sheeks & Sheeks,* for appellant.—1.    The Houston & Texas Central
Railway Company being the owner in fee of the land in controversy, have
the absolute right to sell or lease, dispose of, or encumber the same as it
might see proper.    Rev. Stats., arts. 4211, 4212, 4213, 4214; 1 Redf. on
Law of Rys., 248.

2.    The court erred in ignoring the fact that defendant was the lessee
of the Houston & Texas Central Railway Company, which was the owner
in fee of the land in controversy.    Rev. Stats., arts. 4211, 4212, 4213,
4214; Page v. Hemeburg, 40 Vt., 81; 1 Redf. on Law of Rys., 248; Story's
Eq. Pl., 236.

*Osceola Archer,* for appellee. — 1.    When the Houston & Texas Central
Railway Company built its line at the town of Manor over the strip of
land 200 feet wide which it acquired by gift from James Manor for the
purpose of building said road, the public at once acquired an interest in
the right of way in so far as it was necessary to use it in transacting bus-
iness with the railway company, regardless of who owned the fee in the
right of way; and any lease or sale of said right of way by said company
which would prevent its free use by parties transacting business with the
railway company would be *ultra vires,* and absolutely void.    Rev. Stats.,
art. 4216; Railway v. Morris, 67 Texas, 699, and authorities cited; Thornes
v. Railway, 11 Otto, 71–87; 1 Wait's Act. and Def., 700; 7 Wait's Act.
and Def., 64.

2.    A railway company may acquire land by gift or purchase for the
use and construction of its railway, but it can not lease or sell the same
so long as it is required for the use of such railway.    Rev. Stats., arts.
4211, 4212.

STAYTON, CHIEF JUSTICE.—The nature of this action and averments
of appellee's petition are thus stated with substantial accuracy in brief
of counsel for appellant:

"On the 17th day of September, 1887, J. C. Harris sued the Calcasieu
Lumber Company in the District Court, alleging that it was a corporation,
duly incorporated under the laws of Texas, February 16, 1884, for the
purpose of carrying on the business of buying and selling and dealing in
lumber and building material, with its domicile and principal office in
Austin, Travis County, Texas.

"That the Houston & Texas Central Railway Company was a duly in-
corporated railway company; that a line of the road runs through the '
town of Manor in said county of Travis, and had run through there ever

since September, 1885, and long before then; that it had a right of way at Manor 200 feet wide.

"That on September 14, 1885, the Calcasieu Lumber Company 'did willfully, knowingly, and unlawfully construct buildings along the line of said railway on the said 200 feet of right of way at the town of Manor, to be occupied by it and its employes for the purpose of carrying on its own private business as a dealer in lumber and building material, and has ever since then used and occupied and still occupies it for that purpose; which business is not nor has it ever been necessary for the transaction of the legitimate business operations of said railway, nor necessary for shelter for their employes or for the construction and keeping in repair the railway, but is an obstruction and hindrance to the railway traffic carried on by the citizens of Manor and other places over and with the railway company.'

"That petitioner is and has been for four years a citizen of Manor, engaged in the business as dealer in lumber and building material. Has all of his lumber, etc., conveyed to Manor over that railway. His yard for stacking, etc., is north of the railway track about 200 feet. His lumber, etc., is thrown from the cars close to the road bed, where it remains till he can haul it on wagons to his yard.

"That defendant has unlawfully, willfully, and knowingly taken possession of, occupied, and used continuously since September 14, 1885, all that part of the right of way of said railway lying between the town of Manor and the road bed in and around the depot of said town of Manor, the same consisting of a strip lying adjoining the road bed about 500 feet long and 100 feet wide, and is still illegally in possession of said land, and so using it that petitioner can not have free access to his lumber, etc., when unloaded from the cars, so as to be able to haul and transport it to his yard and place of business, by which he has been damaged, obstructed, and hindered by defendant in transporting his lumber, prevented from having free access thereto, inconvenienced in his business, prevented from expanding and enlarging his business by the acts of defendant in using, enjoying, and building upon the said premises or strip of land 500 feet long by 100 feet wide, in the sum of $50 per month since September 14, 1885, in the sum of $1200, for which he sues.

"He prayed for judgment for $1200, judgment ejecting defendant from the land, requiring the removal therefrom of all buildings, lumber, and building material, and perpetually enjoining and restraining defendant from ever occupying or using said premises in the future for a lumber yard or any other purpose, 'but that said premises, etc., be allowed to remain vacant for the use of the public, so that free access may be had to and from said railway by the public in carrying on business with said railway, and for general and special relief; for costs.'

"Appellant answered by:

"1.   Demurrer.

"2.   General denial.

"3.   That the land held by it was the property in fee simple of the Houston & Texas Central Railway Company, and defendant held the same under a lease given it by the railway company.   That the property of said railway company was in the hands of receivers legally appointed by the United States Circuit Court at Galveston.

"That defendant had leased said land from them also, by reason of which defendant was entitled to the possession of said land.   That Harris had no interest whatever in right of way, or any other easement or right thereon, as is alleged in the petition.

" The court overruled defendant's demurrer.   Case was tried by a jury.  Verdict for plaintiff as follows, in effect:   'We, the jury, find for the plaintiff, and assess his damage at $37.50.'

" Judgment was rendered against the Calcasieu Lumber Company for $37.50 with interest at 8 per cent, and costs.

"Then the court proceeded to enter a decree restraining defendant from ever occupying any part of the premises alleged to be the right of way, and ordering plaintiff to remove its office, lumber shed, and 300,000 feet of lumber and building material within twenty days, or the sheriff should do so at the costs of said Calcasieu Lumber Company."

Appellee bases his right to maintain this action on the following statute, which is a part of the general railroad law:

"Such corporation shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures, and machinery for the accommodation and use of passengers, freights, and business interests, or which may be necessary for the construction or operation of its railway; but no railway company shall have the power, either by its own employes or other persons, to construct any building along the line of their railroad to be occupied by their employes or others, except at their respective depot stations and section houses, and at such places only such buildings as may be necessary for the transaction of their legitimate business operations and for shelter for their employes; nor shall they use, occupy, or cultivate any part of the right of way over which their respective roads may pass, with the exception aforesaid, for any other purpose than the construction and keeping in repair their respective railways." Sayles' Civ. Stats., 4216.

Articles 4211 and 4212 give to railway companies the power to purchase such lands as may be necessary to accomplish the purpose of incorporation, and to take, hold, and use voluntary grants of real estate to aid in the construction of their roads, and the subsequent article provides for the alienation of such as may not be necessary for its use.

Article 4180 provides for the acquisition of right of way or other land necessary to such corporations through the exercise of the power of emi-

nent domain; and article 4206 provides that "the right of way secured or to be secured to any railway company in this State, in the manner provided by law, shall not be so construed as to include the fee simple estate in lands either public or private."

Some time prior to March 30, 1871, James Manor conveyed to the Houston & Texas Central Railway Company a strip of land 200 feet wide through a survey of land owned by him. The deed by which this was done conveyed to the railway company the estate in fee to this strip of land, on which its railway seems to be constructed near its center. Appellant held a part of that strip on the north side of the railway at the town of Manor under leases as alleged in the answer, and was using it as a lumber yard for a distance of about 300 feet westward from the company's depot, but not in such manner as to interfere with the operation of the railway.

The court instructed the jury to find for appellee if they believed from the evidence that appellant occupied the company's right of way and thereby interfered with the business of appellee, and refused the following charge: "If the Houston & Texas Central Railway Company owned the land in fee simple, and the defendant occupied the same under a lease or contract from the said railway company, the defendant is not liable to the plaintiff for damages for so occupying or using said land."

The question arises whether article 4216 has any application to land in which a railway company owns an estate in fee, even though its railway may be built upon it.

There is nothing in that article which evidences an intention to provide a police regulation looking to the safety of travel or other like matter to which such regulations may properly apply.

The statute confers the right on such corporations to own the fee in lands, whether these be necessary to the operation of the company's business or not, though in the one case they are required to alienate them, but in the other not.

There is nothing in the article evidencing an intention to take away from a railway company, so long as it owns the fee in land, the rights and powers usually incident to such ownership, and the power of the Legislature to do this may be questioned, unless in a case where this may become necessary as a police regulation.

The ownership of land, when the estate is a fee, carries with it the right to use the land in any manner not hurtful to others, and the right to lease it to others and therefrom derive profit is an incident of such ownership.

No such rights, however, exist as to a right of way acquired by condemnation or by a conveyance made by the owner which only conveys an easement.

When property is taken for a public use the owner is not divested of any right further than is necessary for the public purpose; hence the statute to which we have referred announces the rule of law that the title

acquired through compulsory taking for public use "shall not be so construed as to include the fee simple estate in lands."

·The rule stated in the statute is but the enunciation of the rule existing without the statute, which was thus well expressed by the Supreme Court of Pennsylvania: "The power (to take private property for public use) arises out of that natural principle which teaches that private convenience must yield to the public wants. This public intent must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it. This being the reason for the exercise of such a power, it requires no argument to prove that after the right has been exercised the use of the property must be held in accordance with and for the purposes that justified its taking; otherwise it would be a fraud on the owner and an abuse of power. Hence it is that no one can pretend that a railroad company may build private houses and mills or erect machinery not necessarily connected with the use of their franchise within the limits of their right of way. If it could, stores, taverns, shops, groceries, and dwellings might be made to line the sides of the road outside of the track—a thing not to be thought of under the terms of the acquisition of the right of way. * * * When, therefore, the railroad company under its charter and the promoter of the private railroad under the Act of 1832 were authorized to take private property for the use of their roads, the rights they acquired were a right of way and facilities necessary to the efficient use of that right. They were not empowered to use the exclusive right of way granted to each for any other independent purpose than that for which it was granted. The fee remained in the private owner, and outside of the authorized use, which must be public or incidental to the public use, the proprietary right is in the original owner." Laine's Appeal, 55 Pa. St., 25; Proprietors v. Railway, 104 Mass., 1.

The statute relied upon is carried into the Revised Statutes from the Act of February 7, 1861 (Pasch. Dig., 4930), where it is found in immediate connection with what is now article 4206, Revised Statutes, which declares that "the right of way" acquired through condemnation "shall not be so construed as to include the fee simple estate in lands either public or private."

We have here a definition of the words "right of way" as used in the original act, of which the article now in question was a part, and in close connection in subject matter as in all other respects.

The fair conclusion is that the same words used in the same law descriptive of a thing or right have the same signification. The words "right of way," if not defined, are expressive of the very nature of the right ordinarily held by railway companies in the lands over which their roads run—a right to use the land only for railway purposes—an easement.

The statute in question prohibits railway companies from erecting along their lines, except at enumerated places, buildings even for the comfort

of their employes, and limits their right at the places named to such buildings as may be necessary for the transaction of their legitimate business operations and for shelter of their employes, and it declares that they shall not "use, occupy, or cultivate any part of the right of way over which their respective roads may pass," etc.

It is true that the words "right of way" have become descriptive of the land over which a railway runs to the extent to which the easement extends; but looking to the entire act we are of opinion that the prohibition was made for the benefit and protection of the land owner and for no other purpose, and that it has no application in cases in which a railway company owns an estate in fee in the land.

Appellee has no cause of action againt appellant on account of its occupation of land owned by and leased from the railway company, so long as such use does not create a nuisance directly affecting him.

That the use to which appellant has appropriated the land creates such a nuisance can not be claimed.

It may be that he could conduct his business more conveniently if the railroad company's property was not used as it has been, but if that be a lawful use the inconvenience resulting from it does not give cause of action.

If the railway company held only an easement the owner of the fee might have ground for complaint, but even then we do not see that appellee would have cause of action against appellant.

If the railway company fails to furnish to him proper facilities for removing his lumber from the place where it unloads it, as far as it owns and controls the land, he may have cause of action against the company, but not against appellant.

We have not deemed it necessary to consider other questions of law or fact involved in the case, but may suggest that the railway company would seem to be a necessary party to an action such as this, which seeks to interfere with the company's right to use its own property.

What has been said is sufficient to indicate our view of the law of the case, which leads to a reversal of the judgment.

It is therefore ordered that the judgment of the court below be reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 15, 1890.