**HIDALGO COUNTY, Texas, Appellant,**

v.

**J. W. PATE et al., Appellees.**

No. 352.

Court of Civil Appeals of Texas.

Corpus Christi.

May 22, 1969.

Rehearing Denied June 19, 1969.

Kelley, Looney, McLean & Littleton, L. C. McLean, Edinburg, Truett Hubbard, Donna, for appellant.

John W. Stayton, Austin, Ewers, Toothaker, Ewers, Byfield & Abbott, O. C. Hamilton, Jr., McAllen, for appellees.

## OPINION

NYE, Justice.

The subject matter of this lawsuit is a portion of a strip of land lying on the northwest side of the highway from the City of Hidalgo to the International Bridge which crosses the Rio Grande River at Reynosa, Mexico. By cross-action, Hidalgo County brought a trespass to try title suit against J. W. Pate and others. From an adverse judgment, Hidalgo County has perfected its appeal to this Court.

The property is a portion of a 400 foot wide strip of land originally conveyed to Hidalgo County in November 1933. The present highway lies in the center of this strip of land. The highway does not run in a true north-south direction so all parties refer to the strips of land on either side of the highway as being located on either the "right" or "left" side determined by a person travelling the highway from Hidalgo to the International Bridge.

In the years 1926 and 1927 J. E. Pate (father of appellee J. W. Pate) and Lon Piper obtained by deed, substantial acreage in Hidalgo County, some of which embraces the strip of land here in controversy. On November 15, 1933 J. E. Pate and Piper executed an instrument of conveyance in favor of Hidalgo County on the 400 foot strip. Prior to this time and for all years subsequent thereto, a road existed down the middle of the strip which from time to time has been widened until it is now approximately 120 feet in width.

In February 1962 the County, acting under a resolution of its commissioners court, declared the strip on the "right" and "left" side of the highway (being the balance of the 400 foot strip) to be surplus and no longer needed for public purposes. The appellees then filed this suit against the County for a temporary injunction to prohibit the sale of the property as surplus, contending, among other things, that the instrument of conveyance dated November 15, 1933 was an easement, not a deed. The County by cross-action filed the trespass to try title action to which action the appellees answered with a plea of not guilty and special pleas, including limitation title. As a result of settlement and dismissals, the strip on the "left" side of the highway is no longer involved.

The issue concerning the proper construction of the instrument was severed and tried, resulting in the trial court holding that the instrument was a deed which conveyed a fee simple title. Appellees, by cross-points, still pursue the theory here that the instrument of conveyance to the County of November 15, 1933, was an easement and not a deed. The county went to trial claiming that the instrument conveyed a fee simple title and nothing less. Appellees contend that if the trial court had held or if we hold that the instrument in question was a conveyance of an easement instead of a fee simple title, the lawsuit would be at an end.

The other phase of the case, the trespass to try title action concerning the strip on the "right" side of the highway was then tried before the court without a jury. The trial court determined: (1) that the County held legal title to the land in dispute as trustee for J. E. Pate, his heirs and assigns as beneficiaries of a resulting trust; (2) that there had been a novation of the original agreement between J. E. Pate and the County by reason of which the interest in the 400 foot strip had been conveyed to the County and as a consequence, the County had relinquished its interest in the 400 foot strip and (3) that appellees had perfected a good limitation title to the land in dispute under the ten-year statute of limitation; and (4) finally, that the County was and is estopped to assert any claim of title to any part of the 400 foot strip.

■ The appellant attacks the rulings of the trial court by nearly one hundred points and sub-points of error. Almost

all of these points of error and sub-points are directed toward the defensive theories advanced by appellees and upheld by the trial court: namely, resulting trust, novation, limitation title, and estoppel. If the trial court is correct on any of these theories, the judgment will have to be affirmed. It is a well established principle that if the findings are sufficient to support the judgment of the trial court under any applicable legal principle and there is no reversible error otherwise presented, the judgment must be affirmed. Therefore, in affirming the judgment, we find it unnecessary to discuss each and every point of error raised by the appellant. However, a limited discussion of the various theories advanced, brings to focus the correct rulings of the trial court.

■■ The appellees in proving a common source of title, introduced documentary evidence of various conveyances which in themselves recognized the outstanding legal title in the County. At least four deeds given by appellees' predecessors in title contained certain provisions excepting the County's title to the strip in question. Typical of these exceptions is the following language: "Except conveyances heretofore made by grantors herein to Hidalgo County and the State of Texas for the purpose of road or highway right-of-way now occupied by Hidalgo County and the State of Texas." Assuming, without deciding the question of whether appellees could perfect a limitation title that would be good against the County of Hidalgo, the argument and contentions for title by limitation fail because of the inconsistency caused by the presentation of these deeds as muniments of appellees' own title. The deeds recognize ownership and possession in the County. In addition, the greater weight and preponderance of all of the evidence was that appellees' possession of the disputed right hand strip was not open, adverse nor such an entry at cross purposes under a claim of right as is contemplated by Art. 5515, Vernon's Ann.Civ.St. This article requires that adverse possession be an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with, and hostile to the claim of another.

The trial court and appellees also conclude from the evidence that the County is estopped from asserting superior title by both its non action and its action relative to the property in question. The evidence established that appellee Continental Oil Company leased a part of the strip on the right hand side of the highway and constructed a service station upon a part of the land. In addition Conoco paid, and the County accepted, ad valorem taxes on the improvements and personal property situated on the leased parcel of land. About the same time one of the county commissioners conferred with appellee Pate and negotiated an easement for a drainage ditch along the right hand side of the highway. The commissioner, with the consent of the other commissioners, sought and gained permission from Pate to dig a drainage ditch on the property in question. After the drainage ditch had been dug and underground drain pipes installed, the appellee spent some $3500.00 in bringing the property to grade, preparatory to the making of additional leases. The appellees contend, and the trial court found, that Pate would not have incurred the expense had it not been for the conferences between the county commissioner and Pate's father, which conferences impliedly acknowledged the ownership of the strip of land in question in Pate.

The evidence clearly shows that although the 1933 conveyance of the strip to the County was duly recorded in the deed records, the County had no actual knowledge of its ownership of the legal title to the land in question until just prior to the time the present controversy arose. Appellees' theory of estoppel is based in part upon the County's non action and its failure to raise objections to the construction of the

service station and other improvements on the property. However, the county commissioners were unaware of the County's ownership. There was no evidence of any legal description of the land from which it could be determined where appellees' improvements were located, at the time they paid taxes on the improvements.

■ It is accurate to say that one of the county commissioners, with the knowledge of the other commissioners discussed the drainage easement with Pate, as if Pate was the true, legal and equitable owner of the strip. However, the evidence was that when he was discussing this matter with Pate, he was acting in the capacity of the county drainage commissioner and not as the commissioner of the County. In any respect the statements made by one of the commissioners when negotiating for the easement did not bind the county commissioners' court. It has been said that "the commissioners' court is a court of record, and speaks through its minutes, and not by the mouths of the members of the body." Gano v. County of Palo Pinto, 71 Tex. 99, 8 S.W. 634, quoted in Bass v. Aransas County Independent School District, 389 S.W.2d 165 (Tex.Civ.App.—Corpus Christi 1965, n. r. e.) at 175.

■ A necessary thesis to the theory of estoppel is that the party against whom it is claimed should at the time be apprised of his rights. Innocent silence or inaction will not work an estoppel. The mere fact that the defendant has acted to his prejudice without investigating the true state of things does not operate as an estoppel. The appellees had the same constructive knowledge of the ownership of the legal title as the County. Our Texas courts have consistently held that failure to assert title to land which is being claimed adversely will not create estoppel. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, affirmed 134 Tex. 332, 136 S.W.2d 207. We hold that the trial court's

theory of limitation title in the appellees and that the County was estopped to claim title to the disputed property was error.

We turn next to the instrument which gave rise to this litigation. The trial court held that instrument in question was a deed conveying a fee simple title to the County. Appellees' cross points are that the trial court erred in so holding and further erred in declaring the instrument to be unambiguous, thereby precluding proof that the parties originally interpreted it to be an easement.

■ There are numerous cases holding that a deed regular on its face, may in fact amount to a conveyance of an easement rather than the fee title, where the term "right-of-way" is used. This term has a two-fold signification. It sometimes is used to describe an incorporeal right of passage over the land of another in which case it is an easement. The term is also used to describe a strip of land upon which the owner appropriates the land, the use of which is connected with some type of transportation. It is sometimes used to describe a strip of land or the purpose for which it is to be used. In this situation it can be a deed in fee for right-of-way purpose. Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451 (Tex.Sup. 1952). In Texas it is a settled rule of construction applicable to written instruments that where a granting clause in a deed conveys a right-of-way, the conveyance is construed as being a mere easement in the property and not a grant of a fee simple estate. The granting clause determines the interest conveyed, and unless there be a repugnancy, obscurity or ambiguity in that clause, it prevails over introductory statements or recitals in conflict therewith. Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437 (1932); Gulf Coast Water Co. v. Hamman Exploration Co., 160 S.W.2d 92 (Tex.Civ.App.—Galveston 1942, writ ref.).

The instrument, stripped to its essential parts for proper interpretation and construction, is clearly unambiguous. It reads in part as follows:

THE STATE OF TEXAS ⎫
COUNTY OF HIDALGO ⎭   KNOW ALL MEN BY THESE PRESENTS:

That, we, J. E. Pate * * * for and in consideration of the sum of Ten Dollars, and other valuable consideration to us in hand paid by Hidalgo County * * * have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto * * * Hidalgo County * * *, all that certain tract or parcel of land lying and being situated in Hidalgo County, Texas, more particularly described as follows:

Starting at * * * which point is also the beginning of the right-of-way hereinafter described and being out of the C. E. Hammon tract * * * said premises here conveyed being a part of the premises conveyed by warranty deed from * * * Hammond to * * * Pate * * * by warranty deed * * * to which reference is here made, said land and premises here conveyed being a part of Porciones 62 and 63 in Hidalgo County, Texas:

Said right-of-way consisting of a strip of land 400 ft. wide lying 200 ft. on either side of the center line of highway described as follows:

Beginning at the Point * * * along center line of Highway to the end of right-of-way * * *;

TO HAVE AND TO HOLD the above described land and premises, together with all and singular the rights and appurtenances thereto in any wise belonging to the said Hidalgo County * * * its successors or the assigns * * * forever.

And we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Hidalgo County, * * * against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

(Signatures)

———◆———

Construing this instrument we begin with the most fundamental rule: That is, to attempt to ascertain the intent of the parties by construing all of the language in the instrument from its four corners. The true intention of the parties is the object of all rules of construction. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W. 2d 442 (Tex.Com.App.1935).

In the first portion of this instrument set forth above, the granting clause has no language restricting the conveyance to that of an easement. "Right-of-way" is used only in the description portion of the instrument. Its use does not denominate an attempt of the parties to describe an incorporeal right of passage over the land of another. In fact the legal description refers to the premises herein conveyed as being a part of the premises conveyed by warranty deed of the grantors' predecessors in title. The habendum clause refers to the land and premises and specifically states "TO HAVE AND TO HOLD the above described land and premises together with all and singular the rights and

appurtenances thereunto in any wise belonging * * * forever." The warranty clause does not limit the intent to grant a fee.

Appellees rely principally upon the case of Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268 (1913); Gulf Coast Water Co. v. Hamman Exploration Co., 160 S.W.2d 92 (Tex.Civ.App.—Galveston 1942, wr.ref.); and Reiter v. Coastal States Gas Producing Co., 382 S.W.2d 243 (Tex.Sup.1964). All of these cases are distinguishable. In each, the right or interest conveyed was described in the granting clause as right-of-way. See Texas Electric Ry. Co. v. Neale, supra, for a discussion of some of these cases. We hold that the words "right-of-way" as here used in the description clearly refer to the land and the intended use to be made of it and not to an intangible right. Texas Electric Ry. Co. v. Neale, supra; Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453 (1890); Brightwell v. International Great Northern R. Co., supra; Stanbery v. Wallace, 45 S.W.2d 198 (Tex. Com.App.1932); Texas Conservative Oil Co. v. Thompson, 163 S.W.2d 854 (Tex.Civ. App.—San Antonio 1942, err. ref., Justice Norvell) The trial court was correct in construing the instrument as a deed. Appellees' counter-points are overruled.

There are a number of undisputed facts and some essential evidentiary facts, all of which we find to be supported by sufficient evidence that give rise to the resulting trust. The road from Hidalgo, Texas to Reynosa, Tamaulipas, Mexico runs on a dirt fill. During a flood of the Rio Grande River in September 1932, the County cut through the roadway and fill to protect the Town of Hidalgo and the farm community to the east from the flood waters. After the flood and prior to November 1933 the International Boundary Commission (hereafter called the IBC)

surveyed the location of the break on the highway, made preliminary cost estimates of a trestle bridge and proceeded with other preparatory work for building a trestle bridge. The gap in the highway was then about 50 feet deep and several hundred feet long and required the traffic to proceed between Hidalgo and the International Bridge over a by-pass road around the cut. The County and the owners of the bridge were most interested in getting the road repaired so that the traffic could proceed without detouring.

J. E. Pate, father of appellee, had an interest in the bridge, as well as the land on either side of the highway as it approached the bridge. Negotiations were undertaken with the Federal Government to build a 500 foot tile trestle bridge just north of the International Bridge. The record indicates that J. E. Pate was extremely anxious to get the road repaired and exerted much effort to get the IBC to construct the trestle. In this connection the record is replete with letters to Congressman West, Senator Connally, the Department of State and others, to build the trestle bridge. The trial court found that prior to the conveyance of November 15, 1933 it was agreed between J. E. Pate, the County and the IBC, that the County would acquire a 400 foot strip of land so that the IBC could construct the proposed bridge. The IBC prepared the legal description to the 400 foot right-of-way which was used in the deed dated November 15, 1933. On November 15, 1933 J. E. Pate and others executed the deed in question conveying a tract of land 400 feet wide to the County for the recited consideration of $10.00 and other valuable consideration. Thereafter, the IBC decided that it would not construct the trestle bridge and suggested to the owners that they take the matter up with the Texas State Highway Department.

On March 30, 1936, J. E. Pate conveyed to the State of Texas in fee a strip of land

100 feet wide that runs right through the center of the 400 foot strip described in the deed dated November 15, 1933. The State of Texas, with the knowledge of the County, accepted the responsibility for the repair and maintenance of the highway, repaired the flood gap in the road at no expense to the County or to J. E. Pate, and went into actual possession of the 100 foot strip.

The deed from appellees to the County recites a consideration of Ten Dollars and other good and valuable consideration. Appellees proved over appellant's objection that the Ten Dollar recital was never paid by the County to the grantors. The trial court found that the appellees did not intend to make a gift of the 400 foot strip to the County; that the strip was conveyed to the County so that the IBC might erect a trestle bridge thereon. It is appellees' contention and the trial court so found, that this strip was conveyed to the County in trust and the trust failed when the IBC refused to build the bridge.

Appellees introduced into evidence along with numerous other exhibits, the deed from J. E. Pate and others to the County. This was done without qualification or limitation and introduced by appellees in support of their title. Appellant would bind appellees on each and every statement contained in the deed because they did not qualify specifically the introduction of such documentary evidence. Because of this, appellant makes four basic arguments that the trial court erred in holding that there was a resulting trust.

First, appellant argues that since the deed was introduced into evidence without qualification or limitation the recited consideration (Ten Dollars) became binding upon the appellees and is not subject to being varied by parol or extrinsic evidence. Second, appellant contends that in view of the fact that the deed recited that the property was to be used for right-of-way purposes, it is evident that the grantors intended to convey a beneficial interest to the County and therefore no resulting trust. Third, the County says that all appellees wanted was an all-weather road to the bridge and flood control, and that these purposes were accomplished by a dirt fill, rather than the trestle bridge. This, it says, brought about the results that were contemplated, even through admittedly no trestle bridge. Continuing, appellant says that Pate received the benefits therefrom and cannot attempt to vary the terms of the instrument nor now be heard to reject the effect of the deed which his predecessors in title executed in favor of the County. To hold otherwise, appellant contends, would render the deed ineffective as to its express purpose. Fourth, appellant contends that parol evidence is inadmissible for any reason to vary the terms of the written deed.

The law of general application is that the execution of a contract in writing is deemed to have set aside all oral agreements theretofore made. Any representations made prior to or contemporaneously with the execution of the written contract are inadmissible in the absence of accident, fraud or mistake of fact to contradict, change or add to the plain terms of such written contract. This rule is founded upon the recognition of the danger and inextricable confusion and untold injury that would result if inferior testimony could be used to order or destroy the solemn contract entered into by the parties thereto. It follows that when a written instrument on its face purports to be a complete expression of the whole agreement, the presumption arises that every important and material matter connected with the agreement has been reduced to writing and parol evidence is not admissible to vary its terms or add others to it.

It is undoubtedly an equally well settled rule that the true consideration for

the execution of a deed may be shown to be different from that expressed therein by parol testimony. The admission of such testimony does not depend upon the existence of fraud, accident or mistake. This rule is based on the ground that proof of true consideration does not vary the instrument, but is consistent with the terms of the contract. Generally, the recital of the consideration received is inserted in an instrument for the convenience of the parties where often the parties do not desire that the real consideration be disclosed and therefore such written recital may be disputed like any other admission. Wigmore on Evidence, Sec. 3423, p. 108. This does not change the rule that parol agreements cannot be engrafted upon written contracts clear in their terms, in absence of fraud, accident or mistake. While the consideration may be shown by parol, the terms of the written contract may not be varied; therefore, a consideration recited to have been paid which is not contractual in nature may be varied or contradicted by parol, although the terms of the contract may not.

■ Evidence received in a court of equity in proving up a trust, is not absolutely limited to documentary evidence. As long as the evidence received does not violate statutes governing express trusts or familiar rules of evidence, parol evidence is admissible to disclose facts that will raise a resulting trust. So in the case of an instrument which appears to be a deed, in a proper case, it may be shown to be a mortgage or a trust. Here the consideration expressed in the deed in question was not contractual in nature. There was no intervention of an innocent third party. The evidence of the trust related to what was done prior to the acquisition of the title. Therefore, parol evidence was properly received to disclose facts that gave rise to the resulting trust. See 57 Tex.Jur.2d, Trusts §§ 248–258, pages 626–636; 19 Tex. Jur.2d, Deeds, §§ 55 and following, pp. 319–321; D. Sullivan & Co. v. Schreiner, 222 S.W. 314 (Tex.Civ.App.—San Antonio

1920); Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184 (1955); Allen v. Allen, 101 Tex. 362, 107 S.W. 528 (1908); Johnson v. Smith, 115 Tex. 193, 280 S.W. 158 (1926).

■ A party introducing documentary evidence without qualification or reservation may be bound thereby as appellant contends. However, there are many exceptions to this general rule which will permit a party who has introduced documentary evidence to disprove facts stated therein. The general rule has not been subject to strict interpretation. If the record discloses that the introduction of a document was for one particular purpose, and other evidence was received which contradicted a portion or some particular feature thereof, the appellate court is reluctant to bind the party to the instrument for all purposes. In the interest of obtaining the truth of particular facts, in direct contradiction to the evidence introduced, the courts and authorities hold that a party may be permitted to disprove the facts stated therein. 20 Am.Jur. 771, Sec. 915; 32A C.J.S., Evidence, § 1040(4), pp. 794–795; Ballard v. Aetna Casualty and Surety Company, 391 S.W.2d 510 (Tex.Civ.App.—Corpus Christi 1965, n. r. e.); Masterson v. Bouldin, 151 S.W.2d 301 (Tex.Civ.App.—Eastland, wr. ref. n. r. e.); Trice Production Company v. Dutton Drilling Company, 333 S.W.2d 607 (Tex.Civ.App.—Houston 1960, ref. n. r. e.) This is what the trial court did. We hold it was not error.

The County argues that the resulting trust was not created because there were no facts shown from which it could be presumed that the County was holding in trust at the time title passed to the County. The conveyance of the 400 foot strip to the County was proved by parol evidence to have been made in trust and which evidence was that such agreement was made prior to the conveyance of November 15, 1933. This evidence was established in part by documentary letters which showed that at least

two months prior to the conveyance in question the IBC was proceeding with the initial phases of estimating the cost of widening the break in the approach to the Hidalgo Bridge to 800 feet and by replacing the break with pile bent trestle. Other evidence, proved that the County of Hidalgo had secured the deed to the right-of-way without charge.

This and similar evidence substantially supports the trial court finding that the 400 foot strip was conveyed to the County for the purpose of erecting a trestle bridge by the IBC. When the all-weather road was finally opened it was not opened by the erection of such proposed trestle bridge, but was opened by the State Highway Department using a dirt fill in the center of the 400 foot strip. It was opened after J. E. Pate had conveyed a 100 foot strip (being a portion of the same property as the strip in controversy) so that the State Highway Department might take jurisdiction of the highway and repair the gap. Actually, Pate received nothing in return for his conveyance of the 400 foot strip to the County. There was already a road prior to the flood. The County made no attempt to convey the right-of-way to the State out of the 400 foot strip which it held legal title as evidence of a right inconsistent to the equitable resulting trust. The right-of-way referred to in the deed was proved by parol to be for the trestle bridge to be built by the IBC in cooperation with the County. There was no evidence that appellees' predecessors in title intended to make a gift of the property to the County; therefore, the trial court was correct in holding that a resulting trust was proven.

The trial court further found that when the IBC decided not to construct the trestle work there was a novation of the agreement between Pate and the County, and in substitution for such original agreement, Pate conveyed a 100 foot strip of land to the State and the State agreed to assume the responsibility for the repair and maintenance of the highway, and did in fact repair the gap resulting from the 1932 flood. Novation is the substitution of a new contract between the same or different parties by exchanging a new obligation for the existing one. It would be a necessary corollary to show that the County relinquished its equitable claim to the 400 foot strip as a consequence thereof, and only held legal title to the property in trust for Pate, his heirs and assigns. Although there is some evidence, at least circumstantially, that would support this theory, we deem it unnecessary to pass on this question in view of the disposition made herein.

We have carefully considered all of appellant's points of error. All of such points inconsistent with our holdings expressed herein are overruled. Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.