**SOUTHTEX 66 PIPELINE COMPANY, LTD., Appellant,**

v.

**John SPOOR, Susan Lynn Spoor, and Claudine Spoor, Individually and as Independent Executrix of the Estate of Donald Eugene Spoor, Deceased, Appellees.**

No. 14–05–01181–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 23, 2007.

---

Frederick D. Junkin, J. Mark Breeding, Paul Stephen Radich, Houston, for appellants.

William D. Noel, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

This case involves land originally condemned by WesTTex Pipeline Company for an easement to build a 12–inch oil and gas pipeline. Several years later, WesTTex discontinued its use of the pipeline and leased it to SouthTex 66 Pipeline Company. John Spoor, Susan Lynn Spoor, and Claudine Spoor, individually and as independent executrix of the estate of Donald Eugene Spoor, deceased, sued SouthTex, claiming that (1) SouthTex was trespassing on their property and (2) WesTTex could not lease the pipeline to SouthTex. Both parties brought declaratory judgment actions on their respective claims. The trial court severed the trespass claim until the resolution of this appeal, but entered a judgment in favor of the Spoors, declaring that SouthTex could not use the pipeline and could not have acquired an interest in operating the pipeline from WesTTex.

Concluding that WesTTex validly assigned its right to use the pipeline to SouthTex via the lease agreement, and concluding that evidence the Spoors attached to their summary judgment motion to show that SouthTex is not currently a common carrier was conclusory and inadmissible hearsay, we reverse the judgment of the trial court and render judgment in favor of SouthTex.

## A. Statement of Facts and Procedural History

WesTTex acquired an easement by condemnation for a 12–inch common carrier pipeline (the "Pipeline") through property owned by the Spoors. In its "Statement of WesTTex 66 Pipeline Co." (the "Statement"), explaining its need to build a pipeline over the Spoors's property, WesTTex noted that the easement was a public necessity and that the pipeline and any replacement pipeline would be used as a common carrier pipeline transporting crude oil and refined petroleum products. The court held that WesTTex could immediately use and occupy the easement for "constructing, maintaining, and operating" the Pipeline. The court further ordered that a Writ of Possession should issue in favor of WesTTex and against the Spoors to enable WesTTex to exercise the rights just mentioned as well as the rights described in WesTTex's Statement on file with the court. The Statement declared, among other things, the following:

- "WesTTex is a common carrier in the pipeline business in ... Texas for the transportation of oil products by pipeline to or for the public for hire."

- "WesTTex has declared by resolution that public convenience and necessity require, and ... it is ... in the public interest for WesTTex to take and acquire by condemnation, an unobstructed permanent easement and right of way ... through and across [the Spoors's property]."

- "Acquisition of the Easement ... is a public necessity.... The pipeline and any replacement pipeline will be utilized by WesTTEx, and its successors and assigns, as a common carrier pipeline transporting crude oil and refined petroleum products...."

Thus, WesTTex's Statement contemplated the potential assignment of the easement and pipeline to other common carriers. Through a Pipeline Lease Agreement (the "Lease Agreement") dated June 15, 2000, WesTTex assigned several rights to SouthTex for a renewable five-year term, includ-

ing (a) the right to operate the Pipeline as a common carrier pipeline, and (b) the property rights WesTTex had acquired and would acquire through the condemnation order.

When the Spoors learned of the Lease Agreement, they filed suit alleging trespass by SouthTex, arguing that rights to a condemned easement cannot be leased, and that SouthTex is not a common carrier pipeline company. The trial court granted the Spoors's no-evidence and traditional motions for partial summary judgment, and denied SouthTex's no-evidence and traditional motions for summary judgment as well as SouthTex's objections to affidavits and several exhibits filed in support of the Spoors's traditional motion for summary judgment.[1]

## B. Standard of Review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a motion for summary judgment, the movant must establish

that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in his favor. *Valence Operating Co.,* 164 S.W.3d at 661.

## C. Resolution of the Issues

### 1. The Adequacy of the Affidavit.

First, we will address SouthTex's fifth issue because it impacts our determination of the other issues. SouthTex claims the trial court erred in overruling its objections to the affidavit of the Spoors' attorney, William D. Noel, and to the attached exhibits numbered 1, 2, 3, 4, and 6. As we explain in more detail below, we agree that the trial court erred in overruling the objections.

#### a. The Law Relating to Affidavits.

Affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence and upon which conclusions are drawn. *Nichols v. Lightle,* 153 S.W.3d 563, 570 (Tex.App.-Amarillo 2004, pet. denied). Merely reciting that an affidavit is

---

1. The Spoors also attached this evidence to their no-evidence summary judgment motion, but we have not considered the evidence in conjunction with that motion, as Rule 166a(i) contemplates that no evidence will be attached to this type of motion. *See* TEX. R. CIV. P. 166a(i) ("After an adequate time for discovery, a party *without presenting summary judgment evidence* may move for summary judgment on the ground that there is no evidence of one or more essential elements of a

claim or defense ....") (emphasis added); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 825 (Tex.2005) (noting that Rule 166a(i) does not allow the filing of a no-evidence motion for summary judgment with supporting evidence); *Binur v. Jacobo,* 135 S.W.3d 646, 650–51 (Tex.2004) (stating the general rule that "if a motion brought solely under [Rule 166a](i) attaches evidence, that evidence should not be considered unless it creates a fact question").

made on personal knowledge is insufficient. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex.1994). Instead, the affidavit must go further and disclose the basis on which the affiant has personal knowledge of the facts asserted. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex.1988). Statements made in the affidavit need factual specificity such as time, place, and the exact nature of the alleged facts. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). A person's position or job responsibilities can peculiarly qualify him to have personal knowledge of facts and establish how he learned of the facts. *First Nat'l Bank in Munday v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 881 (Tex.App.-Eastland 2006, pet. denied).

■ SouthTex objected to the affidavit by Noel in part because it claimed that Noel is disqualified under Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, and claimed that he lacked personal knowledge of the facts and statements to which he testified. SouthTex also objected to the affidavit for including statements which are conclusory, or that call for a legal conclusion or opinion.[2] Subject to certain specified exceptions, Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct prohibits an attorney from appearing as both witness and counsel. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08. If the "lawyer's testimony concerns a controversial or contested matter, combining the roles of

2. Specifically, SouthTex objected to paragraphs 7 and 8 in the original affidavit, and paragraphs 7 and 8 in the revised affidavit. Those paragraphs stated the following:

[original] 7. Attached to this affidavit marked as Exhibit 5 is an original certified copy of a document I obtained from the Railroad Commission of Texas documenting that SouthTex 66 Pipeline Company, Ltd. has not filed a P–5 form of financial responsibility since September 21, 2001, and that as a result SouthTex 66 Pipeline Company, Ltd. is inactive as far as the Railroad Commission of Texas is concerned.

[original] 8. While I was at the Railroad Commission of Texas, I reviewed the records of the Railroad Commission of Texas with the assistance of personnel of the Railroad Commission of Texas and determined that by October 31, 2003, SouthTex 66 Pipeline Company, Ltd. had transferred all of its permits to operate a pipeline in Texas to other entities.

[revised] 7. On August 4, 2005, I personally traveled to Austin, Texas to personally review the records at the Railroad Commission of Texas. Attached to this Affidavit marked as Exhibit 8 is a copy of the receipt for the aviation fuel purchased at the Signature Flight fixed base operator for the Cessna 310 Q airplane with tail Number 713MF that I was a passenger in on the trip from Houston to Austin and back that day. At-

tached to this Affidavit marked as Exhibit 9 is a true and correct copy of the portion of my Visa bill for the month of August 2005 reflecting the charge for the aviation fuel purchased at the Signature Flight fixed based operator for the Cessna 310 Q airplane with tail Number 713MF that I was a passenger in on the trip from Houston to Austin and back that day. Attached to this Affidavit marked as Exhibit 5 is a true and correct copy of an original certified copy of a document I obtained from the Railroad Commission of Texas on August 4, 2005, which reflects that SouthTex 66 Pipeline Company, Ltd. has not filed a P–5 form of financial responsibility with the Railroad Commission of Texas since September 21, 2001. Attached to this Affidavit marked as Exhibit 10 is the original receipt from the Railroad Commission of Texas for my personal payment of $1.10 cash for the certified copy of the Railroad Commission of Texas that I obtained on August 4, 2005, a true and correct copy of which is attached as Exhibit 5 hereto.

[revised] 8. While I was at the Railroad Commission of Texas, I reviewed the records of the Railroad Commission of Texas with the assistance of personnel of the Railroad Commission of Texas and observed that according to the Railroad Commission of Texas, SouthTex 66 Pipeline Company, Ltd. has not had a permit to operate a pipeline in Texas since November 1, 2003.

advocate and witness can unfairly prejudice the opposing party." *Id.* at cmt. 4. The appearance of a testifying advocate tends to cast doubt on the ethics and propriety of the judicial system. *Aghili v. Banks,* 63 S.W.3d 812, 818 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (op. on reh'g). When, as here, an attorney who represents a party is an affiant in support of a motion for summary judgment, he is a witness. *See Mauze v. Curry,* 861 S.W.2d 869, 870 (Tex.1993). Moreover, Noel's testimony did not fall within any of the five exceptions enumerated in Rule 3.08(a).[3] SouthTex's status with the Railroad Commission was a contested matter that formed a basis for the Spoors's suit for trespass. The Spoors had the burden of proving trespass as a matter of law. They used Noel's affidavit to interpret the Railroad Commission's paperwork. As counsel for the Spoors, Noel is an inappropriate person to present any facts as to this question. But, even if the trial court determined one of the Rule 3.08 exceptions applied to Noel, the affidavit still would fail if it contained hearsay and conclusory remarks and failed to prove Noel's personal knowledge.

### b. The Affidavit Contained Inadmissible Hearsay, Was Conclusory, and Failed to Prove Noel's Personal Knowledge of Facts Stated Therein.

■ First, the affidavit failed to prove Noel's personal knowledge of the facts contained in the affidavit. When confronted with an objection due to lack of personal knowledge, Noel responded with a revised affidavit, explaining how he actually traveled to Austin. He also made a few small word changes in his statements, in an attempt to make the statements less of a legal conclusion. Noel misses the point of personal knowledge. The fact that Noel traveled to Austin personally to pick up two certified copies of printouts from the Railroad Commission is irrelevant. Exhibit 5, which appears to be a "Master Inquiry" printout, is not self-explanatory, and needs interpretation by an official of the Railroad Commission with a job that would "peculiarly qualify" that person to have personal knowledge of the facts contained in the document. However, Noel's opinion of what this printout means as to the question of SouthTex's status as a common carrier fails to prove he has personal knowledge of the information in the printout and is conclusory and therefore amounts to no evidence. *See Geiselman v. Cramer Fin. Group, Inc.,* 965 S.W.2d 532, 537 (Tex.App.—Houston [14th Dist.] 1997, no writ) (concluding that an affidavit not based upon the personal knowledge of the affiant amounts to no evidence of the matters stated therein); *Smedvig Asia, Ltd. v. Diaz,* No. 01–99–01107–CV, 2000 WL 351792, at *5 (Tex.App.—Houston [1st

---

**3.** Rule 3.08(a) provides:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se;

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a).

Dist.] Apr. 6, 2000, no pet.) (not designated for publication) (concluding that an affidavit that contains conclusory statements and fails to show the basis on which the affiant had personal knowledge of the facts stated therein is no evidence of those facts). Nothing in the affidavit shows that Noel is qualified to explain the contents of the document. *See* TEX. R. EVID. 602. What "P–5 Status: Inactive" means to the Railroad Commission must be explained by a Railroad Commission official or someone who has proven that he knows what it means.[4] Noel's reference to unnamed employees, such as file clerks, who "assisted" Noel in reviewing the document does not correct the fatal flaws in his affidavit and is inadmissible as hearsay. *See* TEX. R. EVID. 801(d).

■ In paragraphs seven and eight of his original and revised affidavits, Noel states legal conclusions and opinions as to the current status of SouthTex with the Railroad Commission. Again, without any underlying information to show that Noel is qualified to address this issue, Noel's statements amount to no evidence. *See Estate of Gajewsky v. John Hancock Life Ins. Co.*, No.14–04–00748–CV, 2005 WL 1017628, at *3 (Tex.App.—Houston [14th Dist.] May 3, 2005, no pet.) (mem.op.) (holding that an affidavit comprised entirely of legally and factually conclusory statements that contains no attempt to show a basis for those conclusions in the personal knowledge of the affiant amounts to no evidence capable of defeating summary

judgment). In addition, a legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment or to establish the existence of a fact in support of a motion for summary judgment. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583–84 (Tex.1984).

■ Concerning exhibits 1, 2, 3, and 4, we do not address the hearsay objection because these exhibits are not relevant to the resolution of the issues before us, even if they fall under a hearsay exception. *See* TEX. R. EVID. 401.[5] Exhibit 6 contains an affidavit from one of the attorneys in *Orange County, Inc. v. Citgo Pipeline, Co.*, 934 S.W.2d 472 (Tex.App.-Beaumont 1996, writ denied). Exhibit 6 contains the same information that is found in the *Orange County* opinion and has no bearing on the issues before us and, therefore, is not relevant. TEX. R. EVID. 401.

In short, based on the reasons stated above, we conclude that paragraphs seven and eight of Noel's affidavit are insufficient to satisfy TEX. R. CIV. P. 166a(f) for use as evidence, and exhibits 1, 2, 3, 4, and 6, are irrelevant. Thus, we sustain SouthTex's fifth issue, and we will not consider paragraphs seven and eight of the affidavit or the exhibits in determining the issues.

**2. WesTTex Could and Did Assign the Condemned Easement to SouthTex.**

SouthTex argues that its use of the easement and pipeline is authorized by the lease agreement and is consistent with the rights being acquired by WestTex through

---

4. In addition, at least one other question remains unanswered regarding the document; it pertains to the last line on the printout: " * * * *Remarks exist for this organization. Hit PF1 to go to 'Remarks Inquiry.' " No subsequent comment or additional printout exists in the record to show this information; therefore, the printout appears to be an incomplete record with perhaps vital information missing.

5. The exhibits attached to Noel's affidavit, which was attached to Plaintiff's Response to SouthTex's Motions for Summary Judgment, are as follows: (Ex. 1) copy of the Board Action by WestTex; (Ex. 2) copy of the WestTex's Board of Directors resolution; (Ex. 3) copy of in-house approval to build pipeline; (Ex. 4) paper concerning McBeth pipeline; (Ex. 5) master inquiry from the Railroad Commission.

condemnation. The Spoors contend WesTTex is not authorized to partially transfer its rights by lease and, therefore, SouthTex is trespassing. The Spoors also argue that SouthTex cannot lease the pipeline because SouthTex is not a common carrier pipeline company.

### a. Pipeline Easements are Assignable.

■■■■■ Pipeline easements are assignable in Texas. *Valero Eastex Pipeline Co. v. Jarvis*, 990 S.W.2d 852, 855 (Tex.App.-Tyler 1999, pet. denied) (citing *Orange County, Inc.*, 934 S.W.2d at 475). With respect to partial assignments of such an easement, the more modern view in commercial easements is that such an easement is partially alienable when it does not burden the underlying land beyond what was contemplated in the original easement grant. *Orange County, Inc.*, 934 S.W.2d at 475 (citing Alan David Hegi, *The Easement in Gross Revisited: Transferability and Divisibility Since 1945*, 39 VAND. L.REV. 109, 130–31 (1986); RESTATEMENT OF PROPERTY § 493 (1944)). Texas follows this modern view. *Id.* Although easements "in gross" are personal to the grantee only, and are generally not assignable or transferable, the parties may create an assignable easement in gross through an express assignment provision. *Farmer's Marine Copper Works, Inc. v. City of Galveston*, 757 S.W.2d 148, 151 (Tex.App.-Houston [1st Dist.] 1988, no writ); *Engelbretson v. Hyder*, No. 10–02–00320–CV, 2005 WL 168838, at *1 (Tex. App.-Waco Jan. 26, 2005, pet. denied) (mem.op.). Thus, without something specific in the record to show that this easement could not be assigned, Texas law would allow it. We have not found any evidence or fact in the record to make the easement unassignable. In fact, we have found just the opposite.

Not only are commercial easements generally assignable, this specific easement was assignable. The order of the court granting a Writ of Possession to WesTTex incorporated by reference the Statement submitted by WesTTex in the condemnation proceeding. The Statement provided that the easement and Pipeline would be "utilized by WesTTex, and its successors and assigns, as a common carrier pipeline . . . ." Thus, the order by the court granting the easement incorporated language making the easement assignable by WesTTex, as long as the Pipeline is utilized as a common carrier pipeline. *See Strauch v. Coastal States Crude Gathering Co.*, 424 S.W.2d 677, 683 (Tex.Civ.App.-Corpus Christi 1968, writ dism'd) (holding rights were made specifically assignable by language in grant providing terms shall be binding on "successors and assigns"). Both sides agree the Pipeline is being used as a common carrier pipeline in accordance with the condemnation order.

### b. SouthTex's Use Did Not Impose a Greater or Different Burden on the Lease.

■■■■ The Spoors do not argue that the lease subjects the property to a greater burden than granted by the Writ of Possession and condemnation proceedings. They argue that (1) only they can authorize SouthTex to use the land, (2) there is no evidence that WesTTex has the legal right or power to lease the Pipeline to SouthTex, and (3) there is no evidence that SouthTex has the ability to acquire the right to use and occupy the Pipeline and property from WesTTex. We will address the last two questions; by answering them, the first will also be answered. First, the Spoors claim that *Calcasieu Lumber Co. v. Harris*, 77 Tex. 18, 13 S.W. 453 (1890), controls and, according to *Calcasieu*, rights in a condemned easement

cannot be leased to others. However, they misinterpret *Calcasieu*.

*Calcasieu* concerned two statutes. 13 S.W. at 454. First, a statute allowed railroads to condemn easements and right-of-ways on which to build their tracks. *Id.* Second, a different statute allowed railroads to own land in fee simple on which their tracks were built. *Id.* In the second instance, the Court found the railroad would have all the rights in ownership to use the land in any manner not hurtful to others, which included leasing the land to derive a profit from it. *Id.* The Court stated, "No such rights, however, exist as to a right of way acquired by condemnation, or by a conveyance made by the owner which only conveys an easement." *Id.* The Spoors' reliance on this isolated sentence is misplaced. The right the Court referred to was not the right to lease per se, but the right to lease in order to make a profit independent from the use anticipated by the condemnation. The Court went on to explain in the following manner:

> Where property is taken for a public use the owner is not divested of any right further than is necessary for the public purpose; hence the statute to which we have referred announces the rule of law that the title acquired through compulsory takings for public use 'shall not be so construed as to include the fee-simple estate in lands.' ... This being the reason for the exercise of such a power, it requires no argument to prove that after the right has been exercised *the use of the property must be held in accordance with and for the purposes which justified its taking;* otherwise, it would be a fraud on the owner, and an abuse of power.... They were not empowered to use the exclusive right of way granted to each for any other *independent* purpose than that for which it was granted. The fee remained in the

private owner, and, *outside* of the *authorized* use, which must be public, or incidental to the public use, the proprietary right is in the original owner.

*Id.* at 454–55 (citation omitted) (emphasis added). The Court's prohibition concerned any lease that would be made on a condemned easement for an independent use *not contemplated by the condemnation.* The examples given included the building of stores, taverns, or other businesses that fell outside the authorized public use or a use incidental to railroad business. *Id.* at 454.

This appeal does not involve a use falling outside the use authorized by the condemnation proceedings. The use of the Pipeline is the same as the purpose that justified the taking and the same as the authorized use contemplated by the condemnation: the transportation of crude oil and refined petroleum products by a common carrier. Thus, because the lease does not divest the property owner of any additional rights or expand the burden on the property, SouthTex's acquisition of the use of the Pipeline from WesTTex is acceptable under *Calcasieu.*

### c. The Lease Was a Valid Assignment.

██ The Spoors next contend that rights acquired through condemnation cannot be "assigned" through a lease, only through an "assignment," and cite *Southwestern Bell Tel. Co. v. Texas & New Orleans Railroad,* 125 F.2d 699 (5th Cir. 1942), in support of their argument. In essence, their claim is that a lease is not an assignment. Our research does not support their position.

"Lease" is defined as "[a] contract by which a rightful *possessor* of real property conveys the right to use and occupy the property in exchange for consideration,

usu. rent." BLACK'S LAW DICTIO-NARY 907 (8th ed.2004) (emphasis added). "Convey" is defined as "[t]o transfer or deliver (something, such as a right or property) to another, esp. by deed *or other writing.*" *Id.* at 357 (emphasis added). The definition of transfer addresses our issue exactly. "Transfer" is defined as:

> *Any* mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, *lease,* or creation of a lien or other encumbrance. The term embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or an interest in property. . . .

*Id.* at 1535 (emphasis added). And lastly, "assignment" is defined as "[t]he transfer of rights or property." *Id.* at 128. Here, WesTTex transferred its rights by lease, conveying those rights to its assigns. The fact that the rights concerned a condemned pipeline easement, and were transferred by a lease, does not make the conveyance ineffective.

In addition, in *Hubenak v. San Jacinto Gas Transmission Co.,* the Texas Supreme Court anticipated a transfer or conveyance of condemned easements, other than an all-out sale, to other carriers operating pipelines as long as the pipeline is operated in a manner the condemnation contemplated. 141 S.W.3d 172, 191 (Tex.2004). Writing for the majority, Justice Owen stated, "With regard to assignments of easements, an easement for a pipeline obtained by a common carrier in an eminent domain proceeding could, *at a minimum,* be *transferred,* sold, or *conveyed* to another common carrier to operate a pipeline as a common carrier *without an explicit request* for such a right in the condemnation petition." *Id.* (emphasis added). Thus, the Court anticipated other transfers such

as the one WesTTex executed with South-Tex.

As with *Calcasieu,* the Spoors have misconstrued another case on which they have placed heavy reliance. In *Southwestern Bell Telephone Co.,* the condemnation judgments explicitly allowed only "Southwestern Telephone and Telegraph Co. and its successor, Southwestern Bell Telephone Co." to occupy the easement for their business. 125 F.2d at 700. The judgments did not allow a third company to add an additional burden to the easement through a lease. *Id.* As we have already stated, the present case does not involve the imposition of an additional burden on the condemned estate. Nor does it involve a condemnation order that authorized only one specifically listed company to use the easement.

**3. The Spoors Failed to Rebut South-Tex's Proof That it is a Common Carrier.**

Finally, the Spoors argue that SouthTex is not a common carrier. They rely on the affidavit of their attorney, Noel, to support this claim. As we have already held, Noel's affidavit constitutes no evidence, and much of the affidavit, as well as all of the printout from the Railroad Commission, contains inadmissable hearsay. Therefore, the Spoors have not rebutted the evidence SouthTex attached to its motion for summary judgment showing that it is a common carrier, that its partners are common carriers, and that the Pipeline is being operated for the same reasons stated in the condemnation proceedings.

### Conclusion

For the foregoing reasons, we reverse the trial court's judgment, which granted the Spoors' motions for summary judgment, and render judgment that the Spoors take nothing on their claim for declaratory relief. We reverse the trial

court's denial of SouthTex's motions for summary judgment, and we remand the case to the trial court for proceedings consistent with this opinion, including entering a declaration that WesTTex was authorized to grant and convey to SouthTex the property rights it acquired through condemnation and that, through the Lease Agreement, SouthTex acquired those rights and has a legal right to occupy and use the easement for the operation of a common carrier pipeline in accordance with the order granting the Writ of Possession.