**Affirmed and Memorandum Opinion filed December 22, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00819-CV

### SAN SEBASTIAN REALTY CO., INC., Appellant

### V.

### ROEL HUERTA AND ROSA M. HUERTA, Appellees

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 1043170**

## M E M O R A N D U M   O P I N I O N

Appellant San Sebastian Realty Co., Inc. appeals the trial court's judgment granting a no-evidence summary judgment in favor of appellees Roel and Rosa Huerta in its suit alleging breach of a commercial real estate listing agreement. On appeal, San Sebastian contends that the trial court erred in (1) granting the Huertas' objections to its summary judgment evidence, (2) granting summary judgment for the Huertas, and (3) denying San Sebastian due process. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

San Sebastian Realty Co., Inc. is a licensed real estate broker in Texas. In November 2011, Rosa and Roel Huerta entered into a commercial real estate listing agreement with San Sebastian to locate a buyer for the Huertas' property at 8304 Park Place Boulevard in Houston.[1] The listing agreement provided for a broker's fee of 6% of the sales price of the property.

Represented by San Sebastian, the Huertas executed a commercial lease of their property to Richard Nichols in November 2012. The lease included an option for Nichols to purchase the property for $125,000.00. The purchase option specified the method for exercising the option and the terms and conditions of the option. According to San Sebastian, Nichols exercised the option in July 2013, but Rosa Huerta refused to convey the property to Nichols or pay San Sebastian's fee.

In January 2014, San Sebastian sued the Huertas for breach of the listing agreement. San Sebastian sought damages including a broker's fee of $7,500.00 and attorney's fees. The Huertas answered with a general denial and several defenses. In May, a suggestion of death was filed informing the trial court that Roel Huerta had died and requesting that Rosa Huerta, as representative of the estate of Roel Huerta, be substituted as a defendant.[2] Rosa Huerta, individually and as representative of Roel Huerta's estate (collectively, the Huertas), later filed an amended answer that included affirmative defenses and a counterclaim for

---

[1] The listing agreement named both Roel and Rosa M. Huerta as sellers and included signature lines for both, but only Rosa signed the listing agreement. Although the Huertas' argued below that Roel was not a party to the listing agreement, Rosa executed an affidavit in which she averred that both she and her husband Roel "entered into" the listing agreement with San Sebastian.

[2] Although Rosa later appeared individually and as the representative of Roel's estate, the style of the case remained unchanged. Likewise, the trial court's final judgment is in favor of Rosa Huerta and Roel Huerta.

attorney's fees and costs.

San Sebastian moved for summary judgment on its breach of contract claim. In the motion, San Sebastian argued that under the listing agreement, the Huertas agreed to pay the 6% commission when (1) the Huertas sold, exchanged, or agreed to sell the property; (2) San Sebastian procured a ready, willing, and able buyer; or (3) the Huertas granted an option to purchase the property. San Sebastian asserted that it procured Nichols, who was ready, able, and willing to purchase the property under the terms of the option contained in the lease agreement, and that Nichols exercised the option in a letter from his attorney to the Huertas. San Sebastian also asserted that the Huertas accepted Nichols's offer by accepting and negotiating Nichols's earnest money check for $1,000.00. San Sebastian supported its motion for summary judgment with the affidavit of its president, Gene Surrency, dated May 7, 2014; the affidavit of its attorney on attorney's fees; copies of the listing agreement and the commercial lease between the Huertas and Nichols; and two documents purporting to be a letter to the Huertas from Nichols's attorney and a copy of the front and back of Nichol's check, with "Earnest Money" written in the memo line.

The Huertas filed a combined response and cross-motion for summary judgment. In the response, the Huertas contended that the listing agreement provided for payment of San Sebastian's broker's fee when the fee was both earned and payable, and the fee only became payable when (1) the sale of the property closed and was funded, (2) the defendants refused to sell the property after the broker's fee had been earned, or (3) some other breach of the listing agreement occurred. The Huertas did not dispute that San Sebastian had earned its broker's fee, but argued that San Sebastian had presented no competent evidence that the fee had become payable.

3

The Huertas argued that San Sebastian's fee had not become payable because Nichols's letter allegedly notifying the Huertas that he was exercising the purchase option never reached them, Nichols never agreed to purchase the property on the terms and conditions stated in the purchase option, and the Huertas never refused to sell to Nichols on other terms. According to the Huertas, they never received any alleged letter from Nichols because San Sebastian negligently drafted the lease agreement to provide an incorrect address for receipt of the notice. Rosa testified in a supporting affidavit that before the letter was allegedly sent, Nichols proposed purchasing the property, but wanted to finance the sale over a period of ten years rather than the five years contemplated in the purchase option. Rosa told Nichols she would be willing to discuss a sale on those terms, but negotiations did not continue. Rosa further contended that she first learned about Nichol's letter when she visited Nichols to collect the rent for August 2013. At that time, Nichols asked if she had received the letter and she said she had not. Nichols again proposed buying the property on a ten-year term, explaining that the five-year term in the purchase option would put too much strain on his cash flow. Thus, the Huertas asserted, before they had a chance to accept or reject Nichols's exercise of the option, Nichols withdrew that offer.

Rosa acknowledged that she received and cashed a $1,000 check from Nichols with "Earnest Money" in the memo line, but she stated that Nichols's monthly rent was $1,000, and she and her husband treated it as the monthly rental payment, in part because Nichols sent no additional money for that month. The Huertas also provided Nichols a receipt indicating his payment was for rent. After that, the relationship between the Huertas and Nichols continued as one of lessor and lessee.

The Huertas further asserted that they never refused to sell the property and

they remained willing to sell to Nichols on his proposed terms. In fact, Rosa averred that she had "recently reached an agreement in principle to sell the property" to Nichols financed over a ten-year period. She also stated that she anticipated a sale would close by July 31, 2014. Therefore, the Huertas maintained, San Sebastian's broker's fee has never become payable.

In addition to Rosa's affidavit, the Huertas' response included other supporting affidavits as well as copies of the listing agreement and the commercial lease agreement between the Huertas and Nichols. The Huertas also objected to portions of Surrency's affidavit and other evidence attached to San Sebastian's motion for summary judgment.

In the Huertas' motion for summary judgment, they contended that there was no evidence that they breached the listing agreement. The Huertas also claimed that there was no evidence that a contract existed between San Sebastian and Roel Huerta. The Huertas also moved for summary judgment on their counterclaim for attorney's fees.

San Sebastian filed a reply to the Huertas' response to its motion for summary judgment and a separate response to the Huertas' motion for summary judgment. In the reply, San Sebastian argued that the lease agreement only required that notice of Nichols's exercise of the option be sent to a particular address, which was accomplished, and there was no requirement that the Huertas actually receive the notice in order for it to be effective.[3] In any event, San Sebastian argued, Rosa had actual knowledge of Nichols's intent to exercise the option because she acknowledged in her affidavit that Nichols spoke with her about it. San Sebastian also argued that any attempted renegotiation did not affect

---

[3] The purchase option provided: "Tenant may exercise this option only by sending written notice to landlord at 3215 Broadway St., Houston Texas 77017 by certified mail."

5

San Sebastian's right to its fee or alter the Huertas' obligation to convey the property because the lease agreement had a "time is of the essence" provision.

In response to the Huertas' motion for summary judgment, San Sebastian restated the arguments made in its reply. San Sebastian further argued that the Huertas' acceptance of Nichols's earnest money check was an acceptance of the terms and conditions for sale of the property, and therefore the Huertas had no right to simply apply the earnest money to the rent as they claimed. Consequently, San Sebastian argued, the misapplication of the check and the refusal to honor the terms of the listing agreement constituted a breach of the listing agreement. In support of the response, San Sebastian attached additional documentary evidence as well as a second affidavit of Gene Surrency, dated June 6, 2014, and a copy Rosa's affidavit from her response to San Sebastian's motion for summary judgment.

The Huertas filed a reply to San Sebastian's response, asserting that under any version of the facts, San Sebastian had presented no evidence that a broker's fee ever became payable under the terms of the listing agreement. The Huertas also lodged objections to two of San Sebastian's exhibits and to Surrency's second affidavit.

On October 2, 2014, the trial court signed an order granting the Huertas' motion for summary judgment. The order provided that "[a]ll relief requested and not expressly granted is denied," but did not include any express rulings on the Huertas' evidentiary objections. The same day, the trial court signed an order denying San Sebastian's motion for summary judgment.

San Sebastian filed a notice of appeal on October 10, 2014, and a motion for new trial on October 29, 2014. The trial court did not rule on the motion for new trial, so it was overruled by operation of law on December 16, 2014. *See* Tex. R.

6

Civ. P. 329(c). The trial court retained plenary power over the case until January 15, 2015. *See* Tex. R. Civ. P. 329(e).

On December 3, 2014, the Huertas filed two motions: (1) a motion to modify the judgment to reflect that the trial court had sustained their objections to San Sebastian's summary judgment evidence; and (2) a motion for rulings on their objections to San Sebastian's summary judgment evidence. Both motions indicated that a ruling sustaining the Huerta's objections "would have been necessary for the Court to grant [the Huertas'] motion for summary judgment." The Huertas' motions requested that the trial court sign a new order that would modify the previous order granting the Huertas' motion for summary judgment "only by adding one sentence reflecting that the Court sustains [the Huertas'] objections to [San Sebastian's] summary judgment evidence."

San Sebastian filed a response in opposition to the Huertas' motions, and the trial court held a hearing on the Huertas' requested relief. Several days later, on December 16, the trial court signed a written order reflecting its ruling that the Huertas' objections to San Sebastian's summary judgment evidence were sustained. Although not expressly incorporated, attached to the one-sentence order were two proposed orders the Huertas had provided setting out the specific objections to the evidence in San Sebastian's motion for summary judgment and San Sebastian's response to the Huertas' motion for summary judgment.

Unsatisfied with the trial court's separate ruling, on December 29 and 31, 2014, counsel for the Huertas sent two letters to the trial court requesting that it enter a new judgment to add a sentence noting that the court sustained the Huertas' objections to San Sebastian's evidence. In the letters, counsel expressed concern that the earlier judgment did not accurately reflect the trial court's ruling because it did not state that the Huertas' objections to San Sebastian's summary judgment

7

evidence had been sustained, and so the judgment could be subject to attack on appeal by San Sebastian "on a purely technical basis." According to San Sebastian, the Huertas sent the letters to its counsel by regular mail and they were not received until January 6.

On January 6, 2015, the trial court signed an order vacating its October 2 judgment and substituting in its place the judgment from which this appeal is taken. The judgment includes a sentence in which the trial court sustains "all of the objections to [San Sebastian's] evidence made by [the Huertas]."

Later that same day, counsel for San Sebastian filed a letter objecting to the entry of a modified judgment, noting that the Huertas filed a letter rather a motion, and did not request a hearing on the requested relief. San Sebastian also argued that the Huertas' letters and their earlier December motions were untimely, and urged the trial court to grant San Sebastian's motion for new trial "in light of counsel's admission that plaintiff controverted the defendants' summary judgment evidence." The trial court made no further orders before its plenary power expired.

## ANALYSIS OF SAN SEBASTIAN'S ISSUES

San Sebastian contends that the trial court erred in (1) granting the Huertas' objections to its summary judgment evidence, (2) granting the summary judgment for the Huertas, and (3) denying San Sebastian due process.

When, as here, both parties move for summary judgment on the same issues, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In the case of cross-motions for summary judgment, each party must establish that it is entitled to judgment as a

matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

## I.    The Trial Court's Evidentiary Rulings

In its first issue, San Sebastian contends that the trial court erred by granting the Huertas' objections to San Sebastian's summary judgment evidence. Within this issue, San Sebastian raises several sub-issues: (1) all objections except as to the first affidavit of Surrency were waived by the October 2 summary judgment; (2) the Huertas' December motions and letters requesting the trial court to modify its judgment were untimely; (3) the trial court's December 16 ruling on objections and its January 6 judgment were an abuse of discretion; and (4) the Huertas' objections are not valid. We address each in turn.

### A.    Waiver of Objections

San Sebastian first argues that all of the Huertas' objections to San Sebastian's evidence, with the exception of objections to the substance of Surrency's first affidavit, were waived because the Huertas did not seek or obtain rulings on them in connection with the trial court's October 2, 2014 summary judgment order. *See* Tex. R. App. P. 33.1(a); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("[I]t is incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver.").

We disagree that the Huertas have waived their objections in this case because the October 2 summary judgment order was vacated and replaced by the January 6, 2015 judgment. The January 6 judgment expressly provides that all of the Huertas' objections were sustained, and it was preceded by the trial court's

9

December 16, 2014 ruling specifically sustaining the Huertas' objections. *Dolcefino* is distinguishable because in that case the trial judge who granted the summary judgment failed to rule on the appellant's objections, and two months later another judge, who did not hear the motion for summary judgment, refused to rule on the objections. *See* 19 S.W.3d at 926–27. The court concluded that it could not infer from the record whether the trial court sustained or overruled the appellants' objections absent an order disclosing the court's rulings. *Id.* at 926. In this case, the same judge considered the Huertas' summary judgment motion and expressly ruled on their objections to San Sebastian's evidence. Moreover, San Sebastian acknowledges that the Huertas' objections were raised in their summary judgment briefing filed well before the trial court ruled on the objections and signed the final judgment. Because the record reflects that the Huertas raised their objections in the trial court and obtained rulings on them, their objections are not waived. *See* Tex. R. App. P. 33.1(a).

**B.    The Timeliness of the Huertas' December Motions and Letters, the Trial Court's December 16 Ruling, and the Trial Court's Discretion to Grant the Requested Relief**

San Sebastian next contends that the Huertas' December motions and letters, as well as the trial court's December 16 ruling on its objections, were untimely. San Sebastian also argues that the trial court's December 16 ruling and the January 6 judgment were an abuse of discretion.

First, San Sebastian argues that the Huertas' December motion to modify the judgment and its December 29 and 31 letters requesting the trial court to vacate its October 2 summary judgment order and render a new judgment were not timely because they were filed more than thirty days after the October 2 order. *See* Tex. R. Civ. P. 329b; *L.M. Healthcare, Inc. v. Childs*, 929 S.W.2d 442, 444 (Tex. 1996) (per curiam) ("A party must file a motion to modify judgment and motion for new

10

trial within thirty days from the date the trial court signed the judgment."). San Sebastian contends that the Huertas' December motion for a ruling on its objections to San Sebastian's summary judgment evidence constitutes a request for conclusions of law, and because requests for findings of fact and conclusions of law must be filed within twenty days after the trial court's judgment under Texas Rule of Civil Procedure 296, the Huertas' motion for a ruling was untimely because it was filed on December 3, more than twenty days after the October 2 summary judgment ruling.

As noted above, the trial court retained plenary power over the case until January 15, 2015, thirty days after San Sebastian's timely filed motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(e) ("If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first."). A trial court's power to modify its judgment during the period of its plenary power is very broad:

> A trial court retains full control over its judgment while it has plenary power. *Esty v. Beal Bank S.S.B.,* 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.); *WMC Mortg. Corp. v. Starkey*, 200 S.W.3d 749, 751 (Tex. App.—Dallas 2006, pet. denied). Plenary power is broadly defined as the court's power to dispose of any matter before it. *WMC Mortg. Corp.*, 200 S.W.3d at 751. "A trial court's jurisdictional power over its judgment is full, complete, absolute, and unqualified." *Shelby Operating Co. v. City of Waskom*, 964 S.W.2d 75, 80 (Tex. App.—Texarkana 1997, pet. denied); *Mesa Agro v. R.C. Dove & Sons*, 584 S.W.2d 506, 508 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.); *see also In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) ("A trial court's power to modify its judgment is virtually absolute during the period of its plenary power."). A trial court has authority to *sua sponte* modify the

11

judgment within the duration of its plenary power. *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 814 (Tex. App.—Austin 2001, pet. denied).

*Pasadena Refining Sys., Inc. v. McCraven*, Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 WL 1693697, at *11 (Tex. App.—Houston [14th Dist.] May 15, 2012, pet. dism'd by agr.) (mem. op.). Thus, the trial court has the power to modify its judgment while it retains plenary power with or without a timely filed motion.

Assuming all of the Huertas' motions and letters were untimely, the trial court nevertheless may, at its discretion, consider the grounds raised in an untimely motion to modify or motion for new trial under its inherent authority before the court loses plenary power. *See* Tex. R. Civ. P. 329b(d); *Moritz v. Preiss*, 121 S.W.3d 715, 720 (Tex. 2003); *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 486 n.9 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The trial court also has the authority to make rulings on the summary judgment evidence after the entry of its order granting the summary judgment. *See Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 448 (Tex. App.—Waco 2012, pet. denied); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294–95 (Tex. App.—Dallas 2009, no pet.). Thus, even if the Huertas' motions and letters were untimely, the trial court could, in its discretion, consider the requested relief.

San Sebastian next contends that the trial court's December 16 ruling on the Huertas' objections was untimely because it was issued more than two months after the first summary judgment, rather than before, at, or near the time of the October 2 summary judgment ruling. *See Dolcefino*, 19 S.W.3d at 926. San Sebastian argues that there is no indication which of the Huertas' two December motions the trial court considered or granted when it ruled on December 16, and no indication that the trial court determined the Huertas' objections at that time. San Sebastian points to statements the trial court made in the hearing on the Huertas'

12

December motions indicating that she did not remember the facts of the case and believed it was too late to make substantive changes to the judgment. Further, San Sebastian complains that the trial court "refused" to make specific rulings on each objection, and instead made only "vague and global rulings" that amount to no rulings at all. We disagree.

The trial court's December 16 ruling clearly granted the Huertas' motion for ruling on objections to San Sebastian's summary judgment evidence. The ruling specifically states that the trial court sustained the Huertas' objections to San Sebastian's summary judgment evidence, and attaches the Huertas' proposed orders setting out each of their objections to San Sebastian's evidence. The first proposed order lists the objections to the evidence San Sebastian offered in support of its own motion for summary judgment and the second proposed order duplicates those objections and also adds the objections to San Sebastian's evidence offered in opposition to the Huertas' motion for summary judgment. No modification of the October 2 order was made. Although the trial court did not indicate a specific ruling on each proposed order, the ruling itself indicates that the objections were sustained, and the January 6 judgment expressly reiterated that "all" of the Huertas' objections were sustained.

Further, although San Sebastian suggests, based on selective excerpts from the record of the hearing, that the trial court may not have considered or determined the individual objections when it granted the Huertas' motion, a review of the entire hearing transcript dispels that notion. During the hearing, the trial judge initially indicated that she may not have the power to rule on the objections or to modify the judgment, but once she was informed that San Sebastian had filed a motion for new trial, she understood that her plenary power had been extended. The trial court explained that because she did not immediately remember why she

granted the Huertas' motion for summary judgment, she would not rule on the individual objections until she had an opportunity to review the evidence and determine the basis for her ruling. The trial judge also indicated that she was going to read the motions and "go back and look at what the objections were" before she ruled on them. Moreover, the trial court did not immediately rule on the objections, but signed the December 16 order six days after the hearing. Thus, contrary to San Sebastian's suggestion, the record does not reflect that the trial court "refused" either to rule on the specific objections or to disclose which motion she granted.

Here, the Huertas raised their objections to San Sebastian's evidence in their response to San Sebastian's motion for summary judgment and their reply to San Sebastian's response to the Huertas' motion for summary judgment. Both the October 2 order and the January 6 judgment recite that the trial court considered both motions for summary judgment as well as "the summary judgment evidence, the pleadings, and the arguments of counsel, if any" before granting the Huertas' motion for summary judgment. And although the Huertas arguably were less than diligent in seeking rulings on their objections once the trial court granted their summary judgment motion, the trial court exercised its discretion to consider the relief the Huertas requested in their December motions and letters. Further, the trial court signed both the ruling on the Huertas' objections and the January 6 judgment during its plenary jurisdiction. On these facts, we conclude that, even if the Huertas' December motions and letters were untimely, the trial court would not have abused its discretion by considering them and ultimately granting the requested relief during the period it retained plenary jurisdiction.

## D.      The Validity of the Huertas' Objections

San Sebastian next challenges the trial court's rulings sustaining the Huertas' objections to its summary judgment evidence and the evidence it attached

14

in reply to the Huertas' cross-motion for summary judgment. We review the trial court's evidentiary rulings for an abuse of discretion. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). We must uphold the court's ruling if the record shows any legitimate basis supporting that ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Because San Sebastian does not contend on appeal that the trial court's denial of its summary judgment motion was error, we begin with San Sebastian's complaints about the trial court's rulings on the Huertas' objections to the evidence San Sebastian offered in reply to the Huertas' cross-motion for summary judgment. Specifically, San Sebastian complains of the trial court's rulings sustaining the Huertas' objections to exhibits 2 and 6 and Surrency's June 6 affidavit.

### 1. Exhibits 2 and 6

The Huertas objected to San Sebastian's exhibits 2 and 6 on the grounds that they were unauthenticated hearsay. Exhibit 2 is a copy of a document which purports to be a letter from Nichols's attorney to the Huertas notifying them that Nichols was exercising his option to purchase the Huertas' property. Exhibit 6 is a copy of the front and back of a check with "Earnest Money" written in the memo line, which Surrency testified he obtained from Nichols.

The Huertas argue that the trial court did not err in ruling that these exhibits were unauthenticated hearsay because Surrency made no attempt in his June 6 affidavit to establish that the documents were business records or even true and correct copies of the documents. However, Surrency did attempt to authenticate the documents in his May 7 affidavit attached to his own motion for summary judgment, which also included those exhibits.[4] In the May 7 affidavit, Surrency

---

[4] The Huertas argue that Surrency's May 7 affidavit cannot supply the authentication of the exhibits because San Sebastian did not direct the trial court to that affidavit, and a trial court

15

recites form language similar to that used for authenticating business records. *See* Tex. R. Evid. 902(10)(B).[5] But Surrency's affidavit does not explain how a letter prepared by a lessee's attorney and a copy of a lessee's check are business records of San Sebastian, and Surrency does not explain how, as he averred, it was the regular course of business for an employee or representative of San Sebastian "with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such record" or how San Sebastian would know that "the record was made at or near the time or reasonably soon thereafter." Surrency's attempted authentication is ineffective, and his affidavit does nothing more than confirm that the exhibits are "either the original or exact duplicates" of documents he obtained from someone else. The trial court did not abuse its discretion in excluding these documents.

---

is not required to consider summary judgment proof to which it was not directed. But it is well-established that when cross-motions for summary judgment are filed, both parties' evidence is before the trial court. *See, e.g., DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969) ("Since both motions were properly before the court at the time judgment was rendered, all the evidence accompanying defendant DeBord's motion was likewise evidence to be considered in deciding plaintiff's motion and vice versa."); *Murphy v. McDermott Inc.*, 807 S.W.2d 606, 611 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (holding that appellant's affidavit filed in support of his motion for summary judgment was properly before the court as proof in response to appellee's cross-motion). The authorities the Huertas rely on are inapplicable because they concern general objections to voluminous exhibits and do not involve cross-motions for summary judgment.

[5] Surrency averred the following:

"The letter to Roel Huerta and Rosa Huerta from Richard Nichols' Attorney . . . and Richard Nichols' Check Sent as Earnest Money . . . were received, and kept by San Sebastian Realty Co., Inc. in the regular course of business, and it was the regular course of business of San Sebastian Realty Co., Inc. for an employee or representative of San Sebastian Realty Co., Inc. with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are either the original or exact duplicates of the original."

### 2. Surrency's June 6 affidavit

Below, the Huertas objected to several statements in Gene Surrency's June 6 affidavit on the grounds of hearsay and lack of proper foundation. On appeal, they also contend that the statements are conclusory.

In a motion for summary judgment, supporting and opposing affidavits must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Tex. R. Civ. P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). A person's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts. *Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). But the mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. *Valenzuela v. State & Cty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Affidavits must show how the affiant became familiar with the facts in the affidavit. *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex. 1988) (per curiam).

Additionally, conclusory statements in an affidavit unsupported by facts are insufficient to defeat summary judgment. *CA Partners v. Spears*, 274 S.W.3d 51, 63 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Id.*; *Dolcefino*, 19 S.W.3d at 930. To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence and upon which conclusions are drawn. *Southtex 66 Pipeline*, 238 S.W.3d at 542. An affidavit stated in terms of the affiant's subjective beliefs or "understanding" is conclusory and does not equate to

17

personal knowledge. *See Ryland*, 924 S.W.2d at 122; *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 826 (Tex. App.—Dallas 2013, no pet.). This is because such language does not positively and unqualifiedly represent that the "facts" disclosed are true. *See Ryland*, 924 S.W.2d at 122. An objection that statements in an affidavit are conclusory is one that relates to a defect in the substance of the affidavit rather than its form, and so it may be raised for the first time on appeal. *Cruse v. O'Quinn*, 273 S.W.3d 766, 777 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In their brief, the Huertas focus on the following statements in Surrency's June 6 affidavit:

> "2. Next, I learned that the Huertas would sell the property to Mr. Nichols, but on one condition. If Mr. Nichols went through me, then Mr. Nichols would have problems with Ms. Huerta because she was not going to pay my sale's [sic] commission. I understand Ms. Huerta told Mr. Nichols to withdraw his exercise of the option to purchase, and she would sell the property to him. . . . I understand that Ms. Huerta did not show up for closing and refused to provide an alternative closing date.

> "3. . . . I learned that the Huertas were refusing to sell.

None of these statements are supported by any explanation of how Surrency allegedly knew, learned, or came to understand the information conveyed. No do the surrounding statements concerning other events demonstrate a basis for Surrency to have acquired personal knowledge of the above information. As such, the statements are conclusory and the trial court did not abuse its discretion by sustaining the Huertas' objections to them.

Similarly, Surrency averred in his May 7 affidavit that "all statements of fact" in the factual background section of San Sebastian's motion for summary judgment were true and correct, including a statement in a parenthetical that the

Huertas "have refused to convey the property to Mr. Nichols." The Huertas objected to this statement as being inadmissible because it lacked foundation, was speculative, constituted hearsay, and was conclusory. We agree that, as in his June 6 affidavit, Surrency's statement is unsupported by any facts showing he has personal knowledge that the Huertas refused to sell. Therefore, we conclude that the trial court did not abuse its discretion by sustaining the Huertas' objections to these statements.

## II.    The Trial Court's Grant of the Huertas' Cross-Motion for Summary Judgment

In its second issue, San Sebastian argues that the trial court erred in granting the Huertas' cross-motion for summary judgment. As noted above, the primary basis for the Huertas' motion was that there is no evidence that the Huertas breached their listing agreement with San Sebastian.

A trial court must grant a no-evidence motion for summary judgment if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on each of the challenged elements. *See* Tex. R. Civ. P. 166(a)(i). In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the non-movant against whom the summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). If the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact, then the trial court cannot properly grant the no-evidence motion for summary judgment. *Id.*

Under the listing agreement, San Sebastian's commission only became

19

payable when the sale of the property closed, when the Huertas refused to sell the property, or when the Huertas otherwise breached the listing agreement. Of these, San Sebastian alleged only that the Huertas refused to sell the property to Nichols after he exercised the purchase option in the lease agreement. Therefore, San Sebastian must have presented more than a scintilla of evidence to support this allegation to defeat the Huertas' motion for summary judgment.

We have already determined that the trial court did not abuse its discretion by excluding the documents purporting to be the letter in which Nichols allegedly exercised the option and the earnest money check, as well as Surrency's statements in his affidavit concerning the Huertas' alleged refusal to sell the property. Nevertheless, San Sebastian argues that Rosa Huerta's affidavit supplies sufficient evidence to raise a fact issue precluding summary judgment for the Huertas.

Specifically, San Sebastian argues that Rosa proved up the listing agreement and the lease agreement with Nichols, and confirmed that both she and Roel entered into the listing agreement with San Sebastian. Rosa also acknowledged that she accepted Nichols's earnest money check but did not sell to Nichols, instead applying the money as rent. She further admitted to knowing about Nichols's exercise of the option in July 2013, but not selling the property before July 31, 2014, despite a "time is of the essence" clause in the lease. San Sebastian also argues that, in their December letters, the Huertas notified the court that the property still had not sold a year and a half since Nichols gave notice. San Sebastian discounts Rosa's "story" about renegotiating the terms of the sale to Nichols, claiming that it was not an excuse for not selling to Nichols under the terms of the lease. Thus, San Sebastian argues, Rosa's affidavit supplies virtually everything the Huertas attempted to exclude by objection.

In response, the Huertas contend there is no dispute that San Sebastian's

broker's fee only becomes payable when the sale of the property closes and is funded (which all parties concede has not happened) or when the Huertas refuse to sell the property after the fee has been earned. According to the Huertas, there is no competent evidence the Huertas have refused to sell the property. We agree.

The evidence is uncontroverted that the Huertas did not receive a letter giving notice of Nichols's intention to exercise the purchase option. When Nichols first informed Rosa about the existence of a notice letter, he immediately told her that he did not want to purchase the property under the terms of the written agreement between them.[6] Further, both Rosa and Nichols treated the earnest money check as a monthly rent payment and continued their relationship as lessor and lessee. Thus, assuming Nichols sent a letter, the only contract that could have obligated the Huertas to sell was one providing that the Huertas would finance the sale of the property over a five-year term, which Nichols rejected. Nichols instead offered to purchase the property by financing it over a ten-year term, and Rosa testified that the Huertas expressed a willingness to sell to Nichols on those terms. That no sale has yet taken place is not evidence that the Huertas refused to sell; it is only evidence that a sale has not yet occurred. Rosa testified that the Huertas have never refused to sell the property to Nichols, and the record contains no evidence to the contrary.

Even viewing the evidence in the light most favorable to San Sebastian, as we must, we nevertheless conclude that San Sebastian has failed to present more than a scintilla of evidence that Nichols sent notice of his intention to exercise the purchase option but the Huertas refused to sell the property to Nichols under the terms and conditions of their lease agreement. On this record, the trial court did not

---

[6] This conversation was confirmed in the affidavit of Anna Hernandez, a friend of Rosa's, who witnessed the exchange. Hernandez also stated that at no time did Rosa indicate that she would refuse to sell the property to Nichols.

err by granting summary judgment to the Huertas. We overrule San Sebastian's second issue.

## III. Due Process

In its third issue, San Sebastian contends that the trial court violated its right to due process in seven ways:

1. Entering the January 6, 2015 judgment pursuant to the Huertas' counsel's December 29 and 31, 2014 letters because those letters were not e-filed;

2. Entering the January 6, 2015 judgment before San Sebastian had a reasonable opportunity to be heard;

3. Considering relief that the Huertas had no right to request under Texas Rules of Civil Procedure 296 and 329b;

4. Maintaining two separate and distinct electronic docket sheets;

5. Backdating one electronic docket sheet to show that San Sebastian's e-filed letter response of January 6, 2015 was before the court as of 2:55 p.m., six hours before that letter was e-filed;

6. Acting as an advocate to defeat San Sebastian's proposed appellate argument as the reason to enter the January 6, 2015 judgment; and

7. Creating a record clearly establishing that the trial court was not an impartial judge in this case.

San Sebastian maintains that due process was violated because it was denied meaningful notice, a fair trial, and a fair and impartial judge. San Sebastian requests that this court remand the case to the trial court with a mandate requiring the recusal of the trial judge.

San Sebastian complains that the Huertas' December 29 and 31 letters requested more relief than their earlier motions.[7] According to San Sebastian,

---

[7] In the December 29 letter, counsel for the Huertas stated in a footnote that an attached

22

because the time to move to modify the judgment had expired thirty days after the October 2, 2014 judgment, counsel had no right to request that relief and the issue of modification was not "properly before the court." Additionally, San Sebastian complains that the judge granted the Huertas' requested relief even though the Huertas failed to e-file their request or follow the rules of procedure, denying San Sebastian fair notice and an opportunity to respond.

In connection with this argument, San Sebastian suggests that the trial court intentionally back-dated a docket sheet to show that she received San Sebastian's January 6 letter in response to the Huertas' December 29 and 31 letters before, rather than after, she signed the final judgment. San Sebastian bases its claim on an alleged discrepancy between the file-stamp of 8:57 p.m. on San Sebastian's letter and an electronic docket sheet entry reflecting a time 2:55 p.m. According to San Sebastian, the only explanation for the back-dated docket sheet that it would enable the judge to "defend herself against a claim of being ex-parte'd by the [Huertas'] two December letters." Further, San Sebastian accuses the trial judge of keeping "two sets of books" because the electronic docket sheet differs from the trial court's docket sheet accompanying the appellate record, which does not include the times when documents are filed.

As discussed above, while the trial court retained plenary power, it was authorized to consider the Huertas' post-judgment motion to modify the October 2 order granting summary judgment and the motion for a ruling on objections. San Sebastian filed a response to both motions, and the trial court held a hearing in which counsel for both parties participated. The trial court ultimately granted the Huertas' motion for a ruling on December 16. In their December 29 and 31 letters,

---

proposed order and judgment "does correct a typo in the original order by clarifying that 'Defendants' rather than 'Plaintiff' has the right to enforce the judgment. The draft also adds the names of the parties at certain points."

the Huertas candidly expressed their concern that a new judgment should be entered to reflect the trial court's intention to sustain their objections because, without such rulings, in their view summary judgment would not have been proper. Thus, the Huertas did not seek substantively new relief from that previously requested in their earlier motions, and San Sebastian was not denied either notice or an opportunity to respond to the earlier requests for the same relief.

San Sebastian nevertheless complains that new relief was requested because changing the party names in the final judgment was a judicial error that could not be corrected, and the Huertas had not previously requested that the October 2 order be vacated (as opposed to modified). As to the first complaint, the final judgment was not a judgment nunc pro tunc, but was signed while the court retained plenary power and unquestionably had the authority to correct the party names to accurately reflect its earlier rulings. As to the second complaint, the form of the final judgment was not a grant of "new relief." Whether the earlier judgment was vacated and replaced by a new judgment on January 6, rather than merely modified to reflect the requested relief, the substantive relief was the same as that previously granted in the October 2 and December 16 orders.

Finally, we note that San Sebastian filed no motion to recuse in the trial court and on appeal offers only a discrepancy between a file-stamp and an entry on an electronic docket sheet as a basis to insinuate that the trial court engaged in dishonest, and possibly criminal, actions. In light of our resolution of San Sebastian's issues and our conclusion that the trial judge did not err by granting the Huertas' summary judgment motion or considering the Huertas' post-judgment requests for relief, we conclude that San Sebastian's allegations are nothing more than base speculation unsupported by any evidence of improper actions on the part of the trial judge. We therefore overrule San Sebastian's third issue.

## CONCLUSION

We overrule San Sebastian's issues and affirm the trial court's judgment.


        /s/     Ken Wise
                Justice


Panel consists of Justices Christopher, Brown, and Wise.