

# NUMBER 13-23-00595-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**FROST BANK,**                                                                                  **Appellant,**

**v.**

**MICHELLE GLENN, INDIVIDUALLY,
PERRY HILLIER, INDIVIDUALLY
AND AS DULY APPOINTED
ADMINISTRATOR OF THE ESTATE
OF JO ANN TURRENTINE,
MARK MCDONALD, INDIVIDUALLY,
AND PATRICK MCDONALD,
INDIVIDUALLY,**                                                                      **Appellees.**

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 3
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina, and Justices Cron and Fonseca
Memorandum Opinion by Justice Cron**

In this interlocutory appeal, appellant Frost Bank principally complains that the trial court erred by denying its motion to dismiss under the Texas Citizens Participation Act (TCPA or Act). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. Frost Bank contends that appellees Michelle Glenn, Perry Hillier, Mark McDonald, and Patrick McDonald (the Beneficiaries) filed various breach of fiduciary claims against Frost Bank in response to Frost Bank's exercise of its right to petition, the Beneficiaries failed to present clear and specific evidence to establish each element of their claims, and Frost Bank otherwise proved its entitlement to judgment as a matter of law. Relatedly, Frost Bank also argues that the Beneficiaries' evidence should have been excluded as "improper expert testimony," "conclusory," and "irrelevant." We affirm in part and reverse and remand in part.

## I.    BACKGROUND

In 2007, settlor Jo Ann Turrentine created the Jo Ann Turrentine Revocable Living Trust (the Trust) and directed the corpus of the Trust to be distributed to her daughter, Glenn, and her grandchildren, Hillier, Patrick, and Mark, upon her death. Although Turrentine was designated as the "Sole Trustee," the Trust also designated Raymond James Trust Company West, and later Raymond James Trust, N.A. (collectively, Raymond James), as a "Corporate Trustee," and both Turrentine and Raymond James acted as co-trustees.

In 2018, after Turrentine's death, Frost Bank succeeded Raymond James as the "Corporate Trustee." Under the terms of the Trust, the only person who could succeed Turrentine as an individual co-trustee was Glenn; however, because she failed to serve,

2

Frost Bank became the sole trustee. Glenn's failure to serve also meant that any successor trustee after Frost Bank was required to be a "Corporate Trustee," which is defined by the Trust as "a trust corporation or a bank having trust powers, organized under the laws of the United States of America or any state, . . . [that must] have not less than Thirty Million Dollars ($30,000,00) unimpaired capital and surplus."

In April 2020, the Beneficiaries filed suit against Raymond James and Frost Bank for failure to provide them with an accounting of the Trust. The Beneficiaries also brought claims against Raymond James for breach of fiduciary duty for allegedly mismanaging the Trust estate.

In September 2020, consistent with the Trust, Frost Bank provided the Beneficiaries notice of its intent to resign as trustee and requested that the Beneficiaries secure a qualifying successor trustee within thirty days. If the Beneficiaries could not designate another corporate trustee, the Trust required "a court of competent jurisdiction" to appoint a successor corporate trustee "at the expense of the trust estate."

In December 2020, Frost Bank filed its "Counterclaim for Judicial Modification of Trust, Appointment of Successor Trustee, and Declaratory Judgment." Frost Bank alleged that the Beneficiaries "have been unable to secure a potential successor corporate trustee," and therefore, it is necessary to modify the Trust terms to allow for the appointment of an individual successor trustee. Concomitantly, Frost Bank asked the trial court to accept its resignation and appoint an individual successor trustee under the modified terms of the Trust. Frost Bank also requested "a judicial discharge and [a judgment] declaring that Frost Bank has not breached its fiduciary duties during its term

3

as Successor Trustee of the Trust." It additionally requested a declaratory judgment that, pursuant to the Trust's terms, "Frost Bank is not under any duty or responsibility to audit or review the actions or accountings of any predecessor Trustee of the Trust, and that Frost Bank is expressly relieved and discharged from any liability or responsibility from any actions or failure to act of such predecessor." Finally, Frost Bank sought reasonable attorney's fees and costs under the Texas Uniform Declaratory Judgment Act and the Texas Trust Code.

Frost Bank filed a traditional motion for summary judgment on its counterclaims and the Beneficiaries' request for an accounting. On October 4, 2021, the trial court granted Frost Bank partial summary judgment by finding "that Frost Bank has given notice of its resignation per the [Trust] Agreement" but otherwise denied its motion. The trial court directed the parties "to find a successor trustee" within thirty days and ordered Frost Bank to "remain as successor trustee until that time."[1] Several months later, the trial court entered an order removing Frost Bank and appointing Kenton McDonald[2] as the individual successor trustee.

In August 2023, the Beneficiaries amended their petition against Frost Bank by adding claims for breach of fiduciary duty. These claims would become the subject of Frost Bank's motion to dismiss under the TCPA. According to the amended petition, Kenton notified Frost Bank's attorney in October 2020 that the Beneficiaries "had agreed to a modification of the Trust to permit an individual to serve as the Trustee and to have

---

[1] The trial court then severed the remaining claims between the parties from the litigation involving Raymond James.

[2] Kenton McDonald is Glenn's ex-husband and the father of Mark and Patrick.

4

Kenton . . . serving in that capacity and of Kenton['s] . . . willingness to do so immediately." They further alleged that they sent Frost Bank a purported amendment to the Trust executed by the Beneficiaries, but "Frost Bank refused to accept this as adequate and in December 2020 asked the [trial court] . . . to modify the Trust to approve its attorney's fees in this matter, (which had been billed to the Trust) and to grant Frost Bank a discharge and release from liability for its actions."

The Beneficiaries' breach of fiduciary claims can be placed into three buckets: (1) "wasting trust assets" by billing the Trust for unnecessary attorney and trustee fees; (2) "failing to advise" Glenn about Medicare and social security benefits; and (3) "obstructing" the Beneficiaries' claims against Raymond James by failing "to supervise or even review the actions of Raymond James financial advisors and brokers." As to their claim for unnecessary attorney's fees, the Beneficiaries alleged that Frost Bank took "positions" in the litigation that were contrary to their interests and only benefited Frost Bank. Concerning the allegedly improper trustee fees, they faulted Frost Bank for "failing to promptly resign" after its September 2020 notice and instead waiting until the trial court approved the trustee change in 2022.

In its motion to dismiss, Frost Bank argued that the Beneficiaries' breach of fiduciary claims were "based *exclusively* on Frost Bank's exercise of the right to petition."[3] Frost Bank also asserted that the Beneficiaries could not prove their claims because Frost Bank's conduct was consistent with the Trust and the Texas Trust Code.

On the morning of the scheduled dismissal hearing, the Beneficiaries filed a

---

[3] Frost Bank conceded that the Act did not apply to the Beneficiaries' claim for an accounting.

combined motion for leave to file an untimely response and response to the motion to dismiss. The response argued that the Act did not apply because Frost Bank could not "prove that the Beneficiaries' lawsuit is in response to Frost's right to free speech." Regarding the merits of their claims, the Beneficiaries argued that Frost Bank "breached its fiduciary duty by burdening the Beneficiaries with on-going, excessive attorneys' fees used as leverage to obtain a ***release from liability with prejudice*** for Frost Bank." The response did not address the merits of any of the Beneficiaries' other breach of fiduciary duty claims.

The response was supported by affidavits from Kenton and Russell Tranbarger, an accounting expert retained by the Beneficiaries. Kenton averred that, "[p]rior to Frost Bank's discharge as [t]rustee, Frost Bank consistently insisted that its discharge as trustee was accompanied by a **release of Frost Bank from liability with prejudice**." Kenton also claimed that it was "improper for Frost Bank to have made such a request" and that it was "offensive that Frost Bank demanded such release from liability with prejudice [by] spending Trust money to leverage it." On appeal, the Beneficiaries have clarified that this "demand" for a "release from liability with prejudice" was Frost Bank's request for a judicial declaration that "Frost Bank has not breached its fiduciary duties during its term as Successor Trustee of the Trust."[4] The gist of Tranbarger's affidavit was that Raymond James invested Trust assets too conservatively and failed to "take

---

[4] Unlike a request for a declaratory judgment from a trial court, a "release of liability" generally means "a contractual arrangement in which one party assumes the liability inherent in a situation and thereby surrenders legal rights or obligations." *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 283 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). Such a release acts as "an absolute bar to any right of action on the released matter." *Id.*

advantage of the historic market dip" in 2008. His testimony was confined to the management of the Trust "from 2007 to 2014."

Frost Bank filed a motion to strike the response as untimely, arguing that the Beneficiaries failed to show good cause for missing the statutory deadline and that the late response was prejudicial to Frost Bank. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(e) (requiring responses to be filed seven days in advance of the dismissal hearing). It also filed various evidentiary objections to both affidavits. The trial court granted the motion for leave and denied the motion to dismiss.[5] The trial court never ruled on Frost Bank's evidentiary objections, despite Frost Bank filing two advisories requesting a ruling. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).

## II.     APPLICABLE LAW & STANDARD OF REVIEW

Designed to safeguard constitutional rights, the Act provides a mechanism for early dismissal of unmeritorious claims "based on or in response to a party's exercise of the right to free speech, right to petition, or right of association." *Id.* § 27.003(a). It is the movant's initial burden to establish by a preponderance of the evidence that the Act applies to the respondent's claim. *Id.* § 27.005(b). The burden then shifts to the

---

[5] Although Frost Bank refers to the Beneficiaries' response as "untimely" throughout its brief, it does not argue on appeal that the trial court abused its discretion by granting the motion for leave. For example, during the dismissal hearing Frost Bank argued that counsel for the Beneficiaries was indifferent to the statutory deadline to file a response and that counsel intentionally filed the response while Frost Bank's counsel was traveling from San Antonio to Corpus Christi for the hearing, thereby prejudicing Frost Bank's ability to object to the Beneficiaries' evidence. Considering Frost Bank has not carried any of these arguments forward, we view its use of "untimely" as a rhetorical comment, rather than a preserved issue that requires supplemental briefing. *See Borusan Mannesmann Pipe US, Inc. v. Hunting Energy Servs., LLC*, 716 S.W.3d 572, 576 (Tex. 2025).

7

respondent to avoid dismissal by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). A "prima facie" showing generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam) (internal quotation marks and citation omitted). A prima facie case "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). "In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.).

Even if the respondent meets their burden, dismissal is mandatory "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). When determining whether to dismiss the legal action, the trial court must consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). Each step of the inquiry is a question of law we review de novo. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023).

"Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Trustees

8

owe a fiduciary duty to the beneficiaries of a trust. *Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009). This includes "an unwavering duty of good faith, fair dealing, loyalty and fidelity over the trust's affairs and its corpus." *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 735 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied).

### III. THE ACT APPLIES TO CERTAIN CLAIMS

It is undisputed that Frost Bank was exercising its right to petition when it filed its counterclaims against the Beneficiaries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i) (defining "exercise of the right to petition" in part as "a communication in or pertaining to . . . a judicial proceeding"); *Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 333 (Tex. App.—Texarkana 2021, no pet.) (concluding that the movants were exercising their right to petition by filing a pleading in a pending judicial proceeding). Instead, the parties dispute whether the Beneficiaries' amended claims for breach of fiduciary duty were "based on or in response to" Frost Bank's counterclaims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). We examine the allegations in the Beneficiaries' amended petition to determine the bases of their legal actions. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (construing the Act and explaining that the respondent's pleading is the "best and all-sufficient evidence of the nature of the action" (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)). For reasons explained below, we conclude that the Act applies to the Beneficiaries' breach of fiduciary claims for unnecessary attorney and trustee fees, but not to their other claims.

The Beneficiaries alleged that Frost Bank breached its fiduciary duty by causing the Trust to incur unnecessary attorney and trustee fees by "ask[ing]" the trial court "to

9

modify the Trust" rather than accepting the Beneficiaries' nonjudicial amendment of the Trust. According to the Beneficiaries, Frost Bank had a "fiduciary duty to promptly resign following its notice of resignation on September 4, 2020," but instead continued to collect trustee fees until the trial court approved Kenton as successor trustee on March 10, 2022. They further alleged that Frost Bank charged the Trust for its attorney's fees even though Frost Bank took "positions" in the litigation that were beneficial only to Frost Bank and contrary to the interests of the Beneficiaries. Thus, for these claims, the Beneficiaries' theory of liability is premised on Frost Bank filing counterclaims against the Beneficiaries. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127,137 (Tex. 2019) (finding the Act applied because respondent's "counterclaims alleged that the [movant] breached section 11 of the lease by commencing litigation in the Railroad Commission and in this case"); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (finding the Act applied because the movant's "alleged liability stems from" the movant's communication in a judicial proceeding); *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (finding the Act applied where the respondents alleged that their counterclaim was partially based on the movant's "filing of this lawsuit"). We therefore agree with Frost Bank that these "waste" claims were "based on or in response to" Frost Bank's right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

We disagree, however, that any of the other breach of fiduciary claims fall within the Act's protections. The Beneficiaries also alleged that Frost Bank breached its fiduciary duty by failing to "appropriately advise and assist" Glenn with obtaining both Medicare and social security benefits. These claims bear no relation to "a communication in or

10

pertaining to . . . a judicial proceeding." *See id.* § 27.001(4)(A)(i). Likewise, the Beneficiaries' claim that Frost Bank "obstructed" their claims against Raymond James by "fail[ing] to supervise or even review the actions of Raymond James['s] financial advisors and brokers" is unrelated to Frost Bank's right to petition. True, Frost Bank had already filed its counterclaim seeking a judicial declaration that it "is not under any duty or responsibility to audit or review the actions or accountings of any predecessor Trustee of the Trust." But the mere fact that Frost Bank beat the Beneficiaries to the punch in requesting judicial relief on this issue does not mean that the Beneficiaries' amended claim was "based on or in response to" this counterclaim. *See Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 125 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("We decline to hold that the TCPA's applicability turns solely on which party won the race to the courthouse."). Rather, looking to the substance of the Beneficiaries' allegations, we conclude this claim concerns Frost Bank's alleged omissions outside the context of the lawsuit. *See id.* at 124 (finding Act did not apply to counterclaims because the counterclaimant's "factual allegations are solely concerned with private communications outside of, and unrelated to, any judicial or governmental proceeding"). Accordingly, the trial court did not err by denying the motion to dismiss with respect to the Beneficiaries' breach of fiduciary claims for failure to "advise and assist" and "obstruction."

## IV. EVIDENTIARY OBJECTIONS

Before considering whether the Beneficiaries met their prima facie burden on their

11

"waste" claims, we must first decide which evidence was properly before the trial court.[6] *See Hart v. Manriquez Holdings, LLC*, 661 S.W.3d 432, 441 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ("Before examining whether the evidence above satisfies the burden imposed by the TCPA, we begin by addressing one of Hart's evidentiary objections that has bearing on our review of the evidence for this appeal."). A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts without regard to guiding rules or principles. *Id.*

Frost Bank contends that the trial court should have "excluded" Kenton's affidavit as "improper expert testimony" and "conclusory," and Tranbarger's affidavit as "irrelevant." In its reply brief, Frost Bank also complains that the Beneficiaries are improperly citing evidence in their appellate brief that was part of the prior summary judgment record. Frost Bank notes the Beneficiaries did not attach this evidence to their response or otherwise ask the trial court to consider it in relation to the motion to dismiss.

## A. Kenton's Affidavit

Frost Bank first complains that Kenton's affidavit "is improper expert testimony by a witness who is not qualified to offer an expert opinion in this case." Kenton spends a portion of his affidavit explaining his background "as a tax and estate lawyer" and ultimately provides his "professional opinion" that "Frost Bank breached its fiduciary duties in this matter." According to Frost Bank, Kenton "fails to establish how his status as an attorney" qualifies him as an expert. Even if Kenton qualifies as an expert, Frost Bank argues that his opinion lacks a factual basis.

---

[6] Although the trial court never ruled on these objections, Frost Bank preserved this issue by filing two advisories complaining about the trial court's failure to rule. *See* TEX. R. APP. P. 33.1(a)(2)(B).

The TCPA directs courts to "consider . . . evidence a court could consider under Rule 166a." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). In summary judgment practice, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). "An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts." *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *SouthTex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

Here, Kenton established his personal knowledge through his position as the successor trustee. *See id.* He explained that he "presently serve[s] as the trustee," that he has "reviewed" the Trust instrument, and that he is "familiar with Frost Bank's actions while serving as trustee of the Trust." Frost Bank does not contend that the Beneficiaries needed expert testimony to establish a prima facie case for their breach of fiduciary claims, and we are aware of no such requirement. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) ("Expert testimony is required when an issue involves matters beyond jurors' common understanding."). In any event, "not all witnesses who are experts necessarily testify as experts. A witness may have special knowledge, skill, experience, training, or education in a particular subject, but testify only to matters based on personal perception and opinions." *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 850 (Tex. 2011) (citation omitted). Having cleared the

13

personal-knowledge hurdle, Kenton's status as an expert in trust law was immaterial to the admissibility of his affidavit, and Frost Bank's suggestion otherwise is misplaced. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); Tex. R. Civ. P. 166a(f).

Frost Bank also argues that the trial court should have excluded Kenton's affidavit as conclusory. *See In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."); *Padilla v. Metro. Transit Auth. of Harris Ctny.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Affidavits containing conclusory statements that fail to provide the underlying facts supporting those conclusions are not proper summary judgment evidence." (citing *Nguyen v. Citibank, N.A.*, 403 S.W.3d 927, 931 (Tex. App.—Houston [14th Dist.] 2013, pet. denied))). Contrary to Frost Bank's assertion, Kenton's affidavit provides several factual examples to support his conclusion that Frost Bank breached its fiduciary duties to the Beneficiaries. We overrule Frost Bank's sub-issue regarding the admissibility of Kenton's affidavit.

**B.     Tranbarger's Affidavit & Other Evidence**

Frost Bank contends that Tranbarger's affidavit was irrelevant because it focused solely on Raymond James's alleged mismanagement of the Trust estate before Frost Bank became the successor corporate trustee. *See* Tex. R. Evid. 401. Frost Bank also complains that the Beneficiaries are attempting to backfill evidentiary gaps in the motion to dismiss record by asking us to consider evidence from the prior summary judgment record. In particular, the Beneficiaries have directed us to email correspondence from

14

Kenton to Frost Bank's counsel requesting information related to Raymond James's term as corporate trustee. The Beneficiaries state in their brief that Tranbarger's affidavit and the emails only support their "obstruction" claim against Frost Bank. In other words, the Beneficiaries acknowledge that they are not relying on this evidence to establish their "waste" claims.

We have already concluded that the Act does not apply to the Beneficiaries' "obstruction" claim. Accordingly, we do not reach these evidentiary objections because they are immaterial to the disposition of this appeal. *See* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."), 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

## V.    CLEAR & SPECIFIC EVIDENCE

The burden shifted to the Beneficiaries to establish by clear and specific evidence a prima facie case for each essential element of their "waste" claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Even if they satisfied that burden, the trial court was required to dismiss the relevant claims if Frost Bank established an affirmative defense or other grounds on which it was entitled to judgment as a matter of law. *See id.* § 27.005(d). It is undisputed that, as trustee, Frost Bank owed a fiduciary duty to the Beneficiaries. *See Ditta*, 298 S.W.3d at 191.

15

We begin with the Beneficiaries' claim that Frost Bank breached its fiduciary duty by causing the Trust to incur unnecessary trustee fees. Although the Beneficiaries' amended petition includes factual allegations in support of this claim, Kenton's affidavit is entirely silent on the matter. As such, the Beneficiaries failed to meet their prima facie burden under the Act, and the trial court erred by failing to dismiss this claim. *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("We therefore reject Buzbee's argument that he may satisfy his prima facie evidentiary burden under the TCPA by relying solely on the allegations in his petition.").

The Beneficiaries also alleged that Frost Bank's various counterclaims caused the Trust to incur unnecessary attorney fees because, prior to its discharge, Frost Bank was billing the Trust for its attorney fees in the litigation. Kenton specifically avers in his affidavit that Frost Bank "breached its fiduciary duties to the Trust by spending substantial sums of Trust money to pay attorneys working" on Frost Bank's behalf. Frost Bank does not dispute the factual underpinning of the Beneficiaries' claim—that the Trust was paying Frost Bank's attorney fees prior to the discharge. Instead, Frost Bank argues that it was entitled to have this claim dismissed as a matter of law because the Trust vested it with "final and binding" discretion to cause the Trust to incur professional fees related to the administration of the Trust, including the employment of "attorneys" to "prosecute or defend any suit." The Trust expressly provides that such fees "shall be paid from the Trust."

However, these provisions did not absolve Frost Bank of its duty to exercise its

16

discretionary powers in good faith and in the interest of the Beneficiaries. *See* TEX. PROP. CODE ANN. § 113.029(a) ("Notwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of terms such as 'absolute,' 'sole,' or 'uncontrolled,' the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries."); *id.* § 111.0035(b)(4)(B) ("The terms of a trust prevail over any provision of this subtitle, except that the terms of a trust may not limit . . . a trustee's duty . . . to act in good faith and in accordance with the purposes of the trust . . . ."); *see also Mendell v. Scott*, No. 01-20-00578-CV, 2023 WL 4712050, at *15 (Tex. App.—Houston [1st Dist.] July 25, 2023, pet. denied) (mem. op.) ("[W]hile Texas law generally allows a trustee to incur expenses that are necessary to carry out the purposes of the trust and allows the trustee to be reimbursed from the trust estate for such expenses properly incurred, where an expense is not properly incurred, the trustee is not entitled to reimbursement from the trust estate."); *Stone v. King*, No. 13-98-022-CV, 2000 WL 35729200, at *8 (Tex. App.— Corpus Christi–Edinburg Nov. 30, 2000, pet. denied) (not designated for publication) ("A trustee is not entitled to reimbursement for expenses that do not confer a benefit upon the trust estate, such as those expenses related to litigation resulting from the fault of the trustee."); Restatement (Third) of Trusts: Power to Incur and Pay Expenses § 88 cmt. d (AM. L. INST. 2007) (explaining that, although it can be a "complicated" question, a "trustee is normally entitled to indemnification for reasonable attorney's fees and other costs" incurred in defending against unmeritorious claims of trustee misconduct). We therefore look to the nature of each counterclaim and whether it was consistent with Frost Bank's

17

duty to act in "good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." *See* TEX. PROP. CODE ANN. § 113.029(a).

The record indicates that Frost Bank acted in good faith and for the benefit of the Beneficiaries when it filed its counterclaims asking the trial court to modify the Trust to allow for the appointment of an individual successor trustee, to accept its resignation and discharge it as trustee, and to appoint an individual successor trustee under the modified terms of the Trust. *See id.* §§ 112.054(a)(2) ("On the petition of a trustee or a beneficiary, a court may order that the trustee be changed . . . [and] that the terms of the trust be modified . . . if . . . because of circumstances not known to or anticipated by the settlor, the order will further the purposes of the trust . . . ."), 113.081(b) ("The court may accept a trustee's resignation and discharge the trustee from the trust on the terms and conditions necessary to protect the rights of other interested persons."), 113.083(a) ("If for any reason a successor is not selected under the terms of the trust instrument, a court may and on petition of any interested person shall appoint a successor in whom the trust shall vest."). It is undisputed that after Frost Bank sent its resignation notice, there was a continuing need for administration of the Trust (primarily, to pursue claims against the former trustees); that Glenn was unwilling or incapable of serving as an individual successor trustee; that the Trust therefore required a successor corporate trustee to serve as the sole trustee; and that the Beneficiaries were unable to secure a willing corporate trustee within thirty days of the notice. Under these circumstances, the Trust specifically contemplated that it would be necessary for "a court of competent jurisdiction" to appoint a successor corporate trustee "at the expense of the trust estate." With no corporate

18

trustee available, Frost Bank sought the next best remedy—judicial modification of the trust to allow for the appointment of an individual successor trustee. *See id.* § 112.054(a)(2).

Importantly, the relief that Frost Bank prayed for was consistent with the Beneficiaries' wishes, which was for Kenton to serve as the individual successor trustee. And contrary to their suggestion, the Beneficiaries did not have authority to independently modify the Trust and appoint Kenton as the individual successor trustee. The Texas Trust Code grants a settlor, but not a beneficiary, the discretionary authority to "modify or amend a trust that is revocable." *Id.* § 112.051(b). Naturally, Turrentine reserved this right exclusively for herself in the Trust instrument. Thus, because Turrentine did not anticipate the circumstances that occurred after her death, judicial modification was the only way forward for the Beneficiaries. *See id.* § 112.054(a)(2).

Notably, the Beneficiaries had standing to bring the same claims but never did so. *See id.* §§ 112.054(a)(2), 113.081(b), 113.083(a). With the Beneficiaries unwilling to act, Frost Bank took the lead by filing these counterclaims that sought to accommodate the Beneficiaries' need to extend the administration of the Trust well beyond Turrentine's death in 2018. Frost Bank then promptly moved for summary judgment, but the trial court was apparently reluctant to appoint Kenton as trustee, instructing the parties "to find a successor trustee" and ordering Frost Bank to "remain as successor trustee until that time." Eighteen months after Frost Bank filed its counterclaims and largely due to its efforts, the trial court finally approved Kenton as the individual successor trustee.[7] To be

---

[7] Curiously, the trial court did not modify the terms of the Trust when it appointed Kenton, even though such relief was appropriate under the Texas Trust Code and compelled by the necessities of the

clear, the relief the trial court granted was based exclusively on Frost Bank's pleadings because the Beneficiaries never filed a pleading asking the trial court to appoint Kenton as the successor trustee. *See* TEX. R. CIV. P. 301. We conclude that the Beneficiaries failed to establish a prima facie case for their claim that Frost Bank caused the Trust to incur unnecessary attorney fees in bringing these counterclaims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

The Beneficiaries argue that Frost Bank's request for a declaration "that [it] has not breached its fiduciary duties during its term as Successor Trustee of the Trust" could not have been brought in good faith because, as Kenton stated in his affidavit, such a declaration is necessarily adverse to their interests and only benefits Frost Bank. [8] According to the Beneficiaries, this immutable fact is sufficient to establish a prima facie claim that Frost Bank caused the Trust to incur improper attorney fees in bringing this counterclaim against them. We generally agree.

Frost Bank does not dispute that its counterclaim for declaratory relief is self-serving. It relies instead on its discretionary authority under the Trust to charge the Trust for professional fees related to the administration of the Trust. But as we have already explained, the Trust instrument does not supersede Frost Bank's statutory duty to act in good faith and in the interest of the Beneficiaries. *See* TEX. PROP. CODE ANN. § 113.029(a). We hold that the Beneficiaries have satisfied their prima facia burden with

case.

[8] Given its breadth, we construe this request for a declaratory judgment as encompassing Frost Bank's more specific request for a declaration that "Frost Bank is not under any duty or responsibility to audit or review the actions or accountings of any predecessor Trustee of the Trust, and that Frost Bank is expressly relieved and discharged from any liability or responsibility from any actions or failure to act of such predecessor."

20

respect to this particular "waste" claim and that Frost Bank failed to otherwise prove its entitlement to judgment as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c), (d).

## VI. CONCLUSION

We affirm the trial court's order with respect to the Beneficiaries' breach of fiduciary claims for failure to "advise and assist," "obstruction," and "waste" related to Frost Bank's declaratory judgment action. We reverse the trial court's order with respect to the Beneficiaries' breach of fiduciary claims based on the theory that Frost Bank caused the Trust to incur unnecessary trustee and attorney fees by bringing counterclaims related to the judicial appointment of an individual successor trustee. We remand to the trial court with instructions to enter an amended order and to conduct any other necessary proceedings consistent with this memorandum opinion. Finally, for those legal actions that are being dismissed, the trial court is instructed to award Frost Bank its "court costs and reasonable attorney's fees incurred in defending against the legal action." *Id.* § 27.009(a)(1).

JENNY CRON
Justice

Delivered and filed on the
11th day of December, 2025.

21